UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT GRAYER and BRIAN MORTON, | ) | CASE NO.:  1:16-cv-1382 |
| on behalf of themselves and all others similarl | ) | |
| situated, | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE PARKER |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **PLAINTIFFS' MOTION FOR CLASS** |
| KENNAMETAL INC. | ) | **CERTIFICATION PURSUANT TO CIVIL** |
| | ) | **RULE 23** |
| Defendant. | ) | |
| | ) | |

**TABLE OF CONTENTS**

I.   INTRODUCTION……………………………….....................................................1

II.  STATEMENT OF FACTS……………………………………………………….2

III. THIS CASE SHOULD BE CERTIFIED BECAUSE IT SATISFIES THE CLASS
CERTIFICATION REQUIREMENTS OF RULE 23(a) AND (b)(3…………………………5

A.  CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(a)…...……………..5

1.   The Class Is So Numerous That Joinder Is Impracticable………………...……6

2.   There Are Questions Of Law Or Fact Common To The Class……………………9

3.   The Named Plaintiffs' Claims Are Typical Of The Class…………………………11

4.   The Named Plaintiffs Are Adequate Class Representatives……………….………14

B.  CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(3)…………...…15

1.   The Issues Common To All Class Members Predominate………………..………16

2.   A Class Action Is The Superior Method For Resolving This Controversy…...……17

C.  NOTICE SHOULD BE PROVIDED TO THE CLASS MEMBERS………………….....19

IV. CONCLUSION………..…..………………………………….…………………....20

CERTIFICATE OF SERVICE………………………………………………………20

## TABLE OF AUTHORITIES

**Cases**

*Afro American Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974)………..……………7

*Alexander Grant & Co. v. McAlister*, 116 F.R.D. 583 (S.D. Ohio 1987)…………………..……10

*Beattie v. Centurytel, Inc.*, 511 F.3d 554 (6th Cir. 2008)…………………………………5, 12, 16

*Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58 (S.D. Ohio 1991)……………………..……..6

*Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004)…………………...……16

*Castillo v. Morales, Inc.*, 302 F.R.D. 480 (S.D. Ohio 2014)……………………………...……8

*Clay v. Am. Tobacco Co.,* 188 F.R.D. 483 (S.D.Ill.1999)……………………………………12

*Day v. NLO*, 851 F. Supp. 869 (S.D. Ohio 1994)…………………………………………18, 19

*DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171 (8th Cir.1995)……………………..…………9

*Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612,
2017 WL 2418738 (S.D. Ohio June 5, 2017)……………………………………………...……8

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y. 1981)……………………16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)………………………………………….……..6

*Foster v. D.B.S. Collection Agency*, No. 01-CV-514,
2002 WL 484500 (S.D. Ohio March 26, 2002)……………………………………………...……8

*Fox v. Ferguson*, 172 F.R.D. 653 (E.D. Mich. 1995)……………………………………………..9

*Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-CV-2959,
2017 WL 4856369 (S.D. Ohio Oct. 27, 2017)……………………………………...……8, 12, 15, 17

*General Telephone v. Falcon*, 457 U.S. 147 (1982)……………………………………………11, 17

ii

*Hamilton v. Ohio Savings Bank*, 82 Ohio St. 3d 67, 79-80, 694 N.E.2d 442……………..…..…17

*Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998)………………………………………16

*In re Am. Med. Sys., Inc*., 75 F.3d 1069 (6th Cir. 1996)………………………………………9, 12

*In re Prudential Ins. Co*., 148 F.3d 283 (3d Cir. 1998)………………………………….....…18

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
182 F.R.D. 523 (N.D. Ohio 1998)…………………………………………………………….…..…6

*Little Caesar Entpr., Inc. v. Smith,* 172 F.R.D. 236 (E.D.Mich.1997)…………………………..12

*Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956,
2017 WL 3977956 (S.D. Ohio Sept. 11, 2017)…………………………………………….....…16

*Ojalvo v. Board of Trustees of Ohio State University*, 12 Ohio St. 3d 230,
466 N.E.2d 875 (1984)……………………………………………………………………...…..6

*Paxton v. Union Nat'l Bank,* 688 F.2d 552 (8th Cir.1982)………………………………….…...12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965 (1985)…………………..……20

*Pfaff v. Whole Foods Market Group, Inc*., No. 1:09-CV-2954,
2010 WL 3834240 (N.D. Ohio Sept. 29, 2010)……………………………………….…….…6

*Reeb v. Ohio Dept. of Rehabilitation*, 203 F.R.D. 315 (S.D. Ohio 2001)…………….……...8

*Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998)……………………………….12

*Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976)…………………………...…6, 12, 14

*Snelling v. ATC Healthcare Servs. Inc.,* No. 2:11-CV-00983,
2012 WL 6042839 (S.D. Ohio Dec. 4, 2012)………………………………………………...…8

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)…………………………….…9, 12

*Sterling v. Velsicol Chemical Corp*., 855 F.2d 1188 (6th Cir. 1988)………………………...…..18

*Swigart v. Fifth Third Bank*, 288 F.R.D. 177 (S.D. Ohio 2012)……………………..5, 8, 9, 12, 17

*Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1271 (N.D. Ohio 1986)……………………….……8

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016)………………....16

iii

*Wood v. Mid-America Management Corp.*, 192 Fed.Appx. 378 (6th Cir. Aug. 1, 2006)…………1

**Rules**

Fed. R. Civ. PP. 23(a)…………………………………………………………………..5

Fed. R. Civ. P. 23 (a)(1)………………………………………………………………6

Fed. R. Civ. P. 23(a)(2)………………………………………………………………9

Fed. R. Civ. P. 23(a)(3)………………………………………………………………11

Fed. R. Civ. P. 23(a)(4)………………………………………………………………14

Fed. R. Civ. P. 23(b)(3)………………………………………………………………15

Fed. R. Civ. P. 23(c)(2)(B)…………………………………………………………...19

I.  **INTRODUCTION**

On June 7, 2016, Plaintiffs Robert Grayer and Brian Morton initiated this collective action against Kennametal Inc. ("Kennametal") as a result of Defendant's practices and policies of not paying its hourly, non-exempt employees, including Plaintiffs and other similarly-situated employees, for all hours worked, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.C.S. 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03.

On July 22, 2016, Plaintiffs filed their Motion For Conditional Certification, Expedited Opt-In Discovery, And Court-Supervised Notice To Potential Opt-In Plaintiffs (Doc. No. 16), which this Honorable Court granted on September 13, 2016 (Doc. No. 48), conditionally certifying the following FLSA Class:

> All former and current manufacturing employees employed by Kennametal Inc. in Orwell, Ohio at any time between June 7, 2013 and the present.

Subsequent to the Court's order certifying the above FLSA Class, the Parties negotiated a Stipulation Regarding Parameters For Court-Supervised Notice with Proposed Order, as well as a Proposed Notice to Potential Members of a Conditionally Certified Collective Action, which was filed on September 23, 2016 (Doc. No. 55), and which was approved on October 3, 2016. (Doc. No. 59.)  The Notice was mailed to Potential Class Members on October 5, 2016.  (Exhibit 12, Christy Declaration, ¶ 24; Exhibit 13, Lazzaro Declaration, ¶ 17.)  In addition to the two (2) Named Plaintiffs, over 190 employees have opted into this matter.  (Ex. 12, ¶ 25, Ex. 13, ¶ 18.)

The OMFWSA incorporates the minimum-wage and overtime-compensation provisions of the FLSA.  *Wood v. Mid-America Management Corp.*, 192 Fed.Appx. 378, 379 (6th Cir. Aug. 1, 2006).  Plaintiffs seek class certification pursuant to Fed. Civ. R. 23 of the following the class:

All current and former hourly employees of Kennametal Inc. ("Kennametal") who worked at Kennametal's facility in Orwell, Ohio between January 2014 and June 2016 and who were subject to a "shift overlap" or early start work schedule.

## II.    STATEMENT OF FACTS

Defendant Kennametal, Inc. is a manufacturing company that designs and manufactures engineered components, advanced materials and cutting tools.  (Doc. No. 1, ¶ 15.)  Named Plaintiffs Robert Grayer and Brian Morton have been employed, respectively, by Defendant Kennametal, Inc. in its Orwell, Ohio facility since 2004 and 2008.  (*Id*. at ¶¶ 16-17.)

It is undisputed that Defendant traditionally has had three (3) eight-hour shifts, with first shift being 7:00 am to 3:00 pm, second shift being 3:00 pm to 11:00 pm, and third shift being 11:00 pm to 7:00 am.  (Ex. 4, Starr Dep., p. 23; Ex. 5, Gambatese Dep., pp. 24-25)[1]  All non-exempt hourly employees on the eight-hour shift had the same number and amount of time for their breaks.  (Ex. 4, Starr Dep., p. 23; Ex.7, Kovach Dep., p. 16.)  Additionally, approximately four (4) years ago, Defendant added two (2) 24/7 shifts, which are twelve-hour shifts that go from 6:40 am to 6:40 pm and 6:40 pm to 6:40 am.  (Ex. 4, Starr Dep., p. 30; Ex. 5, Gambatese Depo., p. 22.)  Prior to January 2014, these employees had two scheduled 15-minute breaks and a 20-minute lunch, and all three (3) breaks were paid.  (Ex. 4 Starr Dep., pp. 23-40; Ex. 5, Gabatese Dep., pp. 25, 29, 30.)  In fact, prior to January 2014, Defendant had always paid its hourly employees for the entire time they were clocked in, including all breaks.  (Ex. 7, Kovach Dep., p. 14.)

It is further undisputed that in January of 2014, Defendant initiated a "15- minute shift overlap", which required all non-exempt hourly employees to report to work 15 minutes early. (Ex. 4, Starr Dep., pp. 22, 27, 33-34; Ex. 5, Gambetese Depo., p 22; Ex. 7, Kovach Dep., pp. 10-

_____

[1] In response to a Rule 30(b)(6) Deposition Notice, Defendant designated Gina Gamatese,

11.)   During the "15-minute shift overlap", hourly employees were given two (2) scheduled breaks – a 15-minute break and a 30-minute break, with the 24/7 hourly employees having one extra 15-minute break.  (Ex. 4, Starr Dep., pp. 27-28, 33-35; Ex. 7, Kovach Dep., p. 13; Exhibit 8, January 2014 Work Schedule Changes Powerpoint, pp. 6-7.)   All hourly employees were clocked in for their entire shift – they did not clock out for breaks.  (Ex. 4, Starr Dep., p. 28; Ex. 5, Gabatese Dep., pp. 25-26; Ex. 7, Kovach Dep., p. 14; Exhibit 11, Employee Handbook, pp. 41-42.)   Moreover, as instructed by their supervisors and in the Employee Handbook, all employees were required "to have returned to their work area by the end of the assigned break time." (Ex. 8, p. 42.)

At an all-employee meeting in January 2014, the following was announced and stated to all employees, and appeared in a PowerPoint presentation:

- 15-minute shift overlap
- Early start time, same end time
- 1 break – 15 minutes
- Extended lunch – 30 minutes
- 15-minute break period is unpaid

(Exhibit 8, January 2014 Work Schedule Changes PowerPoint, p. 2.)

Defendant announced that the reasons for the change include:

- Improved communication between shifts
- Consistency of startup meetings
- Planned time for data entry, TPM, and 5S activities
- Fewer production disruptions
- Improved productivity

(*Id*., p. 3.)

From January 2014 to July 2014, during the "15-Minute shift overlap," all hourly employees either worked an 8 hour and 15-minute shift or a 12 hour and 15-minute shift. However, employees were only paid for 8 hours or 12 hours respectively, and 15-minutes per

Dennis Starr, and Tanya Randau to testify on behalf of Defendant as company representatives.

day was deducted from their pay under an auto-deduct policy and system.  (Ex. 4, Starr Dep., p. 28, 30, 33-35, 44; Ex. 5, Gambatese Dep., 38; Ex. 7, Kovach Dep., p. 13).

Additionally, it is undisputed that in July of 2014, Defendant switched from the "15-minute shift overlap" to a "20-minute shift overlap," which required all non-exempt hourly employees, who worked a traditional eight (8) hour shift, to report to work 20-minutes early. (Ex. 4, Starr Dep., 43; Ex. 5, Gambatese Depo., p. 31; Ex. 7, Kovach Dep., p. 15.)[2]  During the "20-minute shift overlap", hourly employees were given two (2) scheduled 20 minute breaks. (Ex. 4, Starr Dep., 43; Ex. 7, Kovach Dep., 16; Ex. 9, pp. 41-42.)  All hourly employees were clocked in for their entire shift – they did not clock out for breaks.  (Ex. 4, Starr Dep., p. 28; Ex. 7, Kovach Dep., p. 16.)  Moreover, as instructed by their supervisors and in the Employee Handbook, all employees were required "to have returned to their work are by the end of the assigned break time."  (Ex. 8, p. 42.)

At an all-employee meeting in July 2014, the following was announced and stated to all employees, and appeared in a PowerPoint presentation:

- All current 8-hour shifts will be adjusted by 5 minutes on the front end of each shift:
  - 6:40 AM – 3:00 PM
  - 2:40 PM – 11:00 PM
  - 10:40 PM – 7:00 AM

- Employees will receive the following during the course of their shift:
  - 1 unpaid 20 minute break
  - 1 paid 20 minute meal period (lunch)
  - Break and meal period times will not be changed

(Exhibit 9, July 2014 All Employee Meeting PowerPoint, p. 2.)

---

[2] It appears that as of July 2014, Defendant no longer required the small group of employees who were working the "24/7" 12-hour shift to begin their shifts early under the "shift overlap".

4

From July 2014 through June 2016, all hourly employees on the "8 hour shift" worked an 8 hour and 20-minute shift, but were only paid for 8 hours each shift, as 20 minutes was deducted from their pay each day under an auto-deduct policy and system.  (Ex. 4, Starr Dep., p. 43; Ex. 5, Gambatese Dep., pp. 40-41; Ex. 7, Kovach Dep., p. 17).

Defendant's "shift overlap" policies and procedures ended in June of 2016, which means that employees have been returned to their normal 8-hour or 12-hour shifts, all breaks are again paid, and there is no auto-deducting of time/pay taking place.  (Ex. 5, Gambatese Dep., pp. 59-60; Ex. 7, Kovach Dep., 20-21.)

## III.   **THIS CASE SHOULD BE CERTIFIED BECAUSE IT SATISFIES THE CLASS CERTIFICATION REQUIREMENTS OF RULE 23(a) AND (b)(3)**

"Rule 23 of the Federal Rules of Civil Procedure establishes a two-step analysis to determine whether class certification is appropriate. 'First, plaintiffs must satisfy the four prerequisites of Federal Rule Civil Procedure 23(a).  Second, the action must satisfy at least one of three subdivisions of Federal Rule Civil Procedure 23(b).'" *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012).

### A.   **CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(a)**

Class certification under Fed. Civ. R. 23(a) requires proof that:

1.  the class is so numerous that joinder of all members is impracticable (numerosity);
2.  there are questions of law or facts common to the class (commonality);
3.  the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and
4.  the representative parties will fairly and adequately protect the interests of the class (adequacy).

Fed. R. Civ. P. 23(a).  *See also Beattie v. Centurytel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2008).

The spirit of Ohio Civ. R. 23 "is to open the judicial system… through the class action mechanism."  73 OHIO JUR. 3D *PARTIES* § 59 at 74 (1987).  Courts act improperly by narrowly

5

construing Ohio Civ. R. 23 and thereby undercutting its remedial purpose.  *Ojalvo v. Board of Trustees of Ohio State University*, 12 Ohio St. 3d 230, syl. ¶ 1, 466 N.E.2d 875, 875-76 (1984).

To satisfy Rule 23, it is not necessary for Plaintiffs to establish that they will prevail on the merits of the action.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met")(cited in *Pfaff v. Whole Foods Market Group, Inc*., 2010 WL 3834240, at *2 (N.D. Ohio Sept. 29, 2010))  Rather, "plaintiffs must show that all four of the prerequisites of Rule 23(a) are satisfied, and then must demonstrate that the class falls within one of the subcategories of Rule 23(b)."  *Boggs v. Divested Atomic Corp*., 141 F.R.D. 58, 63 (S.D. Ohio 1991) (citing *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir.), cert. denied, 429 U.S. 870 (1976)).

Plaintiffs easily meet the requirements of class certification under Fed. Civ. R. 23(a).

### 1.      The Class Is So Numerous That Joinder Is Impracticable

The "numerosity" requirement of Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable."  There is "no strict numerical test for determining impracticability of joinder, nor is there a magic number for determining when too many parties make joinder impracticable."  *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 182 F.R.D. 523 (N.D. Ohio 1998) (citing *Senter*, 532 F.2d at 523 n.24).

The numerosity requirement is satisfied in this case.  After this Court conditionally certified a class under the FLSA, Defendant produced a list of the additional 273 individuals who meet the definition of the Class, but who had not yet opted into this matter. Defendant concedes there are enough class members to satisfy the numerosity requirement because Tanya Randau, whom was designated by Defendant pursuant to Rule 30(b)(6) to testify on behalf of Defendant

with respect to the topic of "identification of class members", testified:

> Q.   So it's your understanding that the list of individuals that was provided to counsel included all employees who, current and former, who were hourly employees of Kennametal who worked at Kennametal's Orwell facility in Ohio between January 2014 and June 2016 and wo were subjected to the shift overlap or early start work schedule, right?
>
>> MR.  TYLER:   Object to the form.   You can answer that question.
>
> A.   So, yes, the shift overlap was the basis of how we came up with the hourly employees.
>
> Q.   Okay.  And on that list, there were 273 individuals; is that correct?
>
> A.   Correct.
>
> Q.   That list did not include the names of individuals who had already opted into the case; is that right?
>
> A.   That is correct.
>
> Q.   And there were already about 90 individuals who were included in the case; is that correct?
>
> A.   Approximately.

(Ex. 6, Randau Dep., p. 16-17.)

> Q.   …**So there are 363 current or former hourly employees of Kennametal's Orwell facility between January 2014 and June 2016 who were subjected to a shift overlap or early work start**?
>
>> MR. TYLER:  Object to the form.  You can answer.
>
> A.   **Correct**.

(*Id.* at p. 17.) (Emphasis added.)

Presumptively, a class consisting of approximately 363 members is "so numerous that joinder of all members is impracticable."   Fed. R. Civ. P. 23(a)(1).   *See, e.g.*, *Afro American Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974) (35 employees sufficient to meet

7

numerosity); *Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1271, 1273 (N.D. Ohio 1986) (79 persons sufficient); *Foster v. D.B.S. Collection Agency*, No. 01-CV-514, 2002 WL 484500, *6 (S.D. Ohio March 26, 2002) (proposed class made up of at least 40 individuals and up to 840 people satisfied numerosity requirement); *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012)(350 employees "far surpasses the size of classes this Court has found to satisfy the numerosity requirement in the past."); *Reeb v. Ohio Dept. of Rehabilitation*, 203 F.R.D. 315, 321 (S.D. Ohio 2001) (class of 58 female correction officers satisfied numerosity requirement).

"Often, 'a class of 40 or more members is sufficient to meet the numerosity requirement.'" *Dillow v. Home Care Network, Inc.*, No. 1:16-CV-612, 2017 WL 2418738, at *2 (S.D. Ohio June 5, 2017) (230 workers in a proposed class "more than meets Rule 23's numerosity requirement.") (citing *Snelling v. ATC Healthcare Servs. Inc.,* No. 2:11-CV-00983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012)).  *See also Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014) and *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-CV-2959, 2017 WL 4856369, at *3 (S.D. Ohio Oct. 27, 2017) (67 class members sufficient to meet numerosity requirement).

As stated by the Southern District of Ohio in *Swigart*, 288 F.R.D. at 183:

> Additionally, joinder may be impracticable in this case due to fear of adverse impact at work for the 213 out of 350 putative Ohio class members who were current employees of Defendant as of September 14, 2011. (Doc 153 at 5). In employment class actions like this one, a class member's potential fear of retaliation is an important consideration in deciding whether joinder is impracticable and thus whether the numerosity requirement is satisfied. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 85–86 (S.D.N.Y.2001) (finding in a hybrid action that plaintiffs satisfied numerosity because, among other reasons, they "would not be likely to file individual suits [due to] ... their fear of reprisals").

The Court further stated, "Here, the Court considers the potential for adverse impact at

work for current employees who opt-in to be a compelling reason to certify an opt-out class." *Id.* Further, the Court reasoned that "the putative Ohio class contains a significant number of individuals, and the difficulty and inconvenience of joinder of that many suits, as well as the potential that joinder is impracticable for those putative Ohio class members who are still employees of Defendant, all weigh in favor of class certification. Accordingly, the numerosity requirement is met." *Id*. at 183.

In the instant matter, it is undisputed that a large number of the class members are current employees.  Plaintiffs' easily meet the numerosity requirement under Fed. R. Civ. P. 23(c)(1) as Defendant acknowledges that there are 363 identified members of the Class.

### 2.      There Are Questions Of Law Or Fact Common To The Class

The "commonality" requirement of Rule 23(a)(2) is satisfied where "there are questions of law or fact common to the class."  *Swigart,* 288 F.R.D. at 183.   "Commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Id.* (citing *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir.1995)).

The Sixth Circuit explained in *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), *cert. denied*, 524 U.S. 923 (1998), that:

> The commonality requirement deals with shared questions of law or fact. Although Rule 23(a)(2) speaks of "questions" in the plural, we have said that there need only be one question common to the class.

*Id.* at 397.  (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080).  "[W]e are looking for … a common issue the resolution of which will advance the litigation."  *Id*.  A single issue "whose resolution will affect all or a significant number of the putative class members" is sufficient to satisfy the commonality requirement.  *Fox v. Ferguson*, 172 F.R.D. 653, 66 (E.D. Mich. 1995),

*aff'd*, 91 F.3d 143 (6th Cir. 1996); *Alexander Grant & Co. v. McAlister*, 116 F.R.D. 583, 587 (S.D. Ohio 1987).

As shown hereinabove, in this case there are *many* questions, both legal and factual, that are common to all Class members.  Common to all Class members are the central questions of:

(a)     whether Defendant failed to pay overtime compensation to its hourly employees for hours worked in excess of 40 each workweek;

(b)     whether Defendant's shift overlap policies and procedures violated the FLSA and Ohio law;

(c)     whether Defendant's break policies and procedures violated the FLSA and Ohio law;

(d)     whether Defendant's policies, practices, and procedures of auto-deducting breaks violated the FLSA and Ohio law;

(e)     whether Defendant's policies, practices, and procedures of auto-deducting 15 minutes from class members' time each day during the "15-minute shift overlap" violated the FLSA and Ohio law;

(f)     whether Defendant's policies, practices, and procedures of auto-deducting 20 minutes from class members' time each day during the "20-minute shift overlap" violated the FLSA and Ohio law;

(g)     whether, under the FLSA and Ohio law, Defendant was required to pay Plaintiffs for the 15-minute break during the "15-minute shift overlap";

(h)     whether, under the FLSA and Ohio law, Defendant was required to pay Plaintiffs for the 20-minute break during the "20-minute shift overlap";

(i)     whether Plaintiffs' breaks are considered compensable time under the FLSA and Ohio law; and

(j)     what amount of monetary relief will compensate members of the class for Defendant's violation of the FLSA and Ohio law.

10

Named Plaintiffs Robert Grayer and Brian Morton, as well as a number of Opt-In Party Plaintiffs, previously filed Declarations stating they were non-exempt hourly employees who worked during the shift overlap period and were subject to Defendant's shift overlap policies and procedures.  (See Doc. Nos. 16-2, 16-3, and 16-4.)

In addition to the testimony obtained from Defendant in the 30(b)(6) depositions and the depositions of Named Plaintiffs and Opt-In Party Plaintiffs, 130 Opt-In Party Plaintiffs submitted answers to a Questionnaire that Defendant served.  (Exhibit 14A-K.)  In response to the Questionnaire, all 130 Opt-In Party Plaintiffs stated that: (1) they were required to work during a shift overlap; and (2) their shifts were 8 hours and 20 minutes, but were only paid for 8 hours and/or their shifts were 12 hours and 20 minutes, but they were only paid for 12 hours.  (See Exhibit 14A-K.)[3]

Based on the testimony of Defendant's corporate representatives, as well as the discovery relating to the FLSA Class Members, Named Plaintiffs easily meet the commonality requirement under Fed. R. Civ. P. 23(c)(2) as there are many questions, both legal and factual, that are common to all Class members.

### 3.    The Named Plaintiffs' Claims Are Typical Of The Class

The "typicality" requirement of Rule 23(a)(3) is satisfied where "the claims . . . of the representative parties are typical of the claims . . . of the class."  In *General Telephone v. Falcon*, 457 U.S. 147, 157 (1982), the Supreme Court observed that:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and

---

[3] Defendant's Questionnaire only covered the "20-minute shift overlap", but Defendant's 30(b)(6) witnesses, as well as the Named Plaintiffs and Opt-In Plaintiffs who were deposed, confirmed that all hourly employees were also subjected to the "15-minute shift overlap" policies and procedures.

> whether the named plaintiff's claim and the class claim are so
> interrelated that the interests of the class members will be fairly and
> adequately protected in their absence.

*Accord, Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Sixth Circuit has explained that "[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter*, 532 F.2d at 525 n. 31. *Accord, In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. The typicality requirement is met if the named plaintiff's claims arise "from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory." *Id.* at 1082 (quoted in *Beattie*, 511 F.3d at 561). *See also Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-CV-2959, 2017 WL 4856369, at *8 (S.D. Ohio Oct. 27, 2017)(quoting *Beattie,* 511 F.3d at 561); *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 185 (S.D. Ohio 2012)(citing *Little Caesar Entpr., Inc. v. Smith,* 172 F.R.D. 236, 243 (E.D.Mich.1997); *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561–62 (8th Cir.1982).

"In other words, typicality is satisfied if the class members' claims are "fairly encompassed by the named plaintiffs' claims.'" *Ganci,* 2017 WL 4856369, at *8 (quoting *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998) (en banc) (quoting *Am. Med. Sys.,* 75 F.3d at 1082)).

The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Swigart*, 288 F.R.D. at 185 (citing *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill.1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3).")).

Defendant's 30(b)(6) designees testified that between January 2014 and July 2014:

- Defendant initiated a "15-minute shift overlap", which required all non-exempt hourly employees to report to work 15-minutes early.  (Ex. 4, Starr Dep., pp. 22, 27, 33-34; Ex. 5, Gambetese Depo., p 22; Ex. 7.)

- Hourly employees were given two (2) scheduled breaks – a 15-minute break and a 30-minute break, with the 24/7 hourly employees having one extra 15-minute break.  (Ex. 4, Starr Dep., pp. 27-28, 33-35; Ex. 7, Kovach Dep., p. 13; Exhibit 8, January 2014 Work Schedule Changes Powerpoint, pp. 6-7.)

- All hourly employees were clocked in for their entire shift – they did not clock out for breaks.  (Ex. 4, Starr Dep., p. 28; Ex. 5, Gabatese Dep., pp. 25-26; Ex. 7, Kovach Dep., p. 14; Exhibit 11, Employee Handbook, pp. 41-42.)

- All hourly employees either worked an 8 hour and 15-minute shift or a 12 hour and 15-minute shift.  However, employees were only paid for 8 hours or 12 hours respectively. (Ex. 4, Starr Dep., pp. 28, 30, 33-35, 44; Ex. 5, Gambatese Dep., 38; Ex. 7, Kovach Dep., p. 13).

- 15 minutes per day was deducted from the employees' time/pay under an auto-deduct policy and system.  (Ex. 5, Gambatese Dep., 38.)

Further, Defendant's 30(b)(6) designees testified that between July 2014 and June 2016:

- Defendant switched from the "15-minute shift overlap" to a "20-minute shift overlap," which required all non-exempt hourly employees, who worked a traditional eight (8) hour shift, to report to work 20-minutes early.   (Ex. 4, Starr Dep., p. 43; Ex. 5, Gambatese Depo., p. 31; Ex. 7, Kovach Dep., p. 15.)

- Hourly employees were given two (2) scheduled 20 minute breaks.  (Ex. 4, Starr Dep., p. 43; Ex. 7, Kovach Dep., p. 16; Ex. 9, pp. 41-42.)

- All hourly employees were clocked in for their entire shift – they did not clock out for breaks.  (Ex. 4, Starr Dep., p. 28; Ex. 7, Kovach Dep., p. 16.)

- From July 2014 through June 2016, all hourly employees on the "8-hour shift" worked an 8 hour and 20-minute shift, but were only paid for 8 hours each shift. (Ex. 4, Starr Dep., p. 43; Ex. 5, Gambatese Dep., pp. 40-41; Ex. 7, Kovach Dep., p. 17).

- 20 minutes per day was deducted from the employees' time/pay under an auto-deduct policy and system.  (Ex. 5, Gambatese Dep., pp. 40-41.)

Here, the claims of the Named Plaintiffs and the proposed class members, as well as

Defendant's defenses, all arise from one course of conduct:  Defendant's decision to adopt a

13

shift-overlap policy and practice, requiring non-exempt hourly employees to start their shifts 15 minutes, and then 20 minutes, early, but continuing to only pay them for eight (8) hours of work, instead of eight (8) hours and 15 minutes, and later eight (8) hours and 20 minutes.  Defendant's shift overlap policies were applied equally to all non-exempt hourly employees at Defendant's Orwell facility between January 2014 and June 2016, with the exception of the change for the small group of "24/7 shift" (or 12-hour) employees in July 2014.   Therefore, the typicality requirement of under Fed. R. Civ. P. 23(c)(3) is met.

### 4.    The Named Plaintiffs Are Adequate Class Representatives

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."   The Sixth Circuit has outlined two criteria to consider in determining whether the representation of the class would be adequate: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interest of the class through qualified counsel." *Senter*, 532 F.2d at 524-25.

Named Plaintiffs satisfy the adequacy requirement.  First, the questions relating to the common liability alleged by all Class members are identical, making all Class members' interests in the litigation common and Named Plaintiffs have no interests antagonistic to the Class. Second, Plaintiffs are dedicated to the vigorous prosecution of this case, as demonstrated by, among other things, their constant involvement in the proceedings.

In the present case, Named Plaintiffs are challenging the same unlawful conduct and seeking the same relief as the class they seek to represent, and the interests of the Named Plaintiffs are aligned with those of the class members.  Named Plaintiffs have proven themselves to be ready, willing, and able to fulfill their duties.  Both Named Plaintiffs appeared for two (2)

14

separately scheduled mediation conferences with Magistrate Judge Thomas M. Parker.  (Exhibit 12, Christy Declaration, ¶ 27.)  Both Named Plaintiffs attended and testified in depositions in this matter.  (*Id*. at ¶ 28.)  Both Named Plaintiffs provided responses to Defendant's discovery requests.  (*Id*. at ¶ 29.)    Moreover, both Named Plaintiffs have actively assisted Plaintiffs' Counsel with prosecuting the claims in this matter as they have participated in numerous calls, communications, and meetings with Plaintiffs' Counsel.  (*Id*. at ¶ 30.) Named Plaintiffs have shown through their active participation in this action that they are ready, willing, and able to fulfill their duties as Named Plaintiffs. (*Id*. at ¶ 31.)

Furthermore, Named Plaintiffs, the current Opt-In Plaintiffs, and the Class, are represented by highly experienced, qualified counsel with significant experience prosecuting class actions of this type.  (See Ex. 12, Christy Declaration, ¶¶ 2-18; Ex. 13, Lazzaro Declaration, ¶¶ 2-11 and Appendix 1; Ex. 15, Bush Declaration, ¶¶ 2-7.)

For these reasons, Plaintiffs, and their counsel, will provide adequate representation to the Class as required by Rule 23(a)(4).

## B.    CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(b)(3)

Fed. Civ. R. 23(b)(3) states that a class action may be maintained if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

 "As the Advisory Committee's Notes of 1966 indicate, the purpose of Rule 23(b)(3) is to 'achieve economies of time, effort, and expense, and promote, uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results' where other provisions of Rule 23(b) are not applicable." *Ganci v. MBF*

*Inspection Servs., Inc.*, No. 2:15-CV-2959, 2017 WL 4856369, at *9 (S.D. Ohio Oct. 27, 2017)

### 1.    The Issues Common to All Class Members Predominate

"With regard to predominance, given the 'interplay between the requirements of 23(a) and (b), ... a finding of commonality will likely satisfy a finding of predomination.'" *Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2017 WL 3977956, at *8 (S.D. Ohio Sept. 11, 2017)(quoting *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004)).

"[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016)(citing 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).   "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)…'" *Id.*

Predominance is shown where the issues of law or fact common to the class "represent a significant aspect of the case" and are "able to be resolved for all members of the class in a single adjudication."  7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, Civil 2d § 1778 at 528 (1986), quoted in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

As the Sixth Circuit held in *Beattie*, "[c]ommon issues may predominate when liability can be determined on a classwide basis, even where there are some individualized damage issues."  511 F.3d at 564.  Consequently, "courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions."  *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

In the present case, all of the issues bearing on Defendant's liability are common to the Class.  As stated hereinabove, Defendant's liability will be determined by interrelated questions, all of them common to the class as a whole.  These common liability issues clearly "represent a significant aspect of the case" and are "able to be resolved for all members of the class in a single adjudication."  7A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, Civil 2d § 1778 at 528 (1986).  Because the "shift overlap" practices and policies are uniform throughout the Class, and because the issue of individual damages is not complex or burdensome, issues of fact and law common to all Class Members predominate over any individual issues. Thus, the predominance requirement of Rule 23(b)(3) is satisfied.

## 2. A Class Action Is the Superior Method For Resolving This Controversy

In determining whether a class action qualifies as the superior means of resolving the parties' dispute, Rule 23(b)(3) lists four factors for Courts to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class actin.  *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 186 (S.D. Ohio 2012); *See also Hamilton v. Ohio Savings Bank*, 82 Ohio St. 3d 67, 79-80, 694 N.E.2d 442; *Ganci,* 2017 WL 4856369, at *11.

Class-wide resolution of this controversy is plainly superior to the alternative of litigating many individual suits.  *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a

17

concern to provide access to the courts for litigants with limited resources and common claims").

In *Day,* the Court observed that:

> A class action is a procedural device that can accomplish significant judicial economy. 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 1.01 (1992).  The Supreme Court has recognized that class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure."  *General Tel. Co. v. Falcon,* 457 U.S.147, 159, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982) (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974)).

*Id.* at 883.  *See In re Prudential Ins. Co.*, 148 F.3d 283, 316 (3d Cir. 1998) ("the [district] court examined the relatively modest size of individual claims and the sheer volume of those claims in the aggregate, and concluded a class action presented the 'only rational avenue of redress for many class members'").  *Cf. Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("The procedural device of a Rule 23(b)(3) class action was designed not only as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense").

Here, Class Members have very little interest in litigating their claims individually, given the small amount of individual damages involved.  Moreover, out of the 363 Class Members, the docket shows that over 190 of them have already opted into this matter during through the FLSA conditional certification phase.  The high opt-in rate of the FLSA collective action (over 50%) is strong evidence that the Class Members do not have an interest in individually controlling the prosecution of separate actions, and rather want to participate collectively as a Class.

To Class Counsel's knowledge, there are no existing lawsuits involving the conduct complained of herein, so there is no concern that the creation of a class would impede competing litigation.  Similarly, there will be substantial judicial efficiency achieved by consolidating all Class Members' claims before one forum and few difficulties in managing a class trial given the

18

commonality of proof described above.  Additionally, since the Class Members all worked at Kennametal's Orwell, Ohio facility, this forum is convenient for all Parties involved.  Further, the large number of Class members makes prohibitive the possibility of consolidation of all claims.  To date, the Parties have not faced difficulties in managing the collective action that consists of over 190 employees.  There is no reason to believe that there would be difficulties in managing a class action consisting of 363 employees, particularly given they are all located within, or have ties to, this district.  For these reasons, the class mechanism is particularly well-suited to this case and the superiority requirement is satisfied.

Certification under Rule 23 will permit class-wide adjudication of all liability issues. Without class certification, the adjudication of class members' claims would require 363 individual lawsuits, with concomitant duplication of proceedings, not only in state or federal trial courts, but potentially in appellate courts as well.  Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually.  The present case is clearly one in which "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### C.     NOTICE SHOULD BE PROVIDED TO THE CLASS MEMBERS

Fed. R. Civ. P. 23(c)(2)(B) states:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting

exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Should a class be certified, the Court must provide the Class with the best notice practicable, in order to protect the rights of absent Class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12, 105 S.Ct. 2965 (1985) (provision of "best notice practicable" with description of the litigation and explanation of opt-out rights satisfies due process).

Plaintiffs' proposed Notice, attached hereto as exhibit 3, more than meets the requirements of Fed. R. Civ. P. 23(c)(2)(B).

As such, Plaintiffs request that this Honorable Court order Defendant to answer Plaintiffs' Class Discovery Directed to Defendant, attached here to as exhibit 2, so that notice can be sent to the Class Members.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Named Plaintiffs respectfully request that this Honorable Court certify the proposed Rule 23 Class and implement a procedure, set forth in the accompanying proposed order (*see* Exhibit 1), whereby Class Members are notified of Plaintiffs' claims and their rights in this action.

Respectfully submitted,

  /s/ Chastity L. Christy
Chastity L. Christy (0076977)
Anthony J. Lazzaro (0077962)
Lori M. Griffin (0085241)
The Lazzaro Law Firm, LLC
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com

  /s/ Richard Bush
Richard Bush (0020899)
Green Haines Sgambati Co., L.P.A.
City Center One Building, Suite 800
100 Federal Plaza East
P.O. Box 849
Youngstown, Ohio 44501-0849
Phone:  330-743-5101
Attorneys for Plaintiffs

chastity@lazzarolawfirm.com
lori@lazzarolawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2017 a copy of the foregoing *Plaintiffs' Motion For Class Certification Pursuant To Civil Rule 23, Expedited Class Discovery, And Court-Supervised Notice To Class Members, and Memorandum in Support* was sent to all parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.


  /s/ Chastity L. Christy
One of the Attorneys for Plaintiffs

21