**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT GRAYER and BRIAN MORTON, | ) | CASE NO. 1:16-cv-1382 |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE PARKER |
| | ) | |
| v. | ) | |
| | ) | |
| KENNAMETAL INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   SUMMARY OF ARGUMENT ......................................................................... 1

III.  SUMMARY OF FACTUAL BACKGROUND .................................................. 3

    A.    Nature And Structure Of Kennametal's Orwell Facility ......................... 3

    B.    Kennametal's Policies And Procedures Regarding Timekeeping And Breaks ....................................................................................................... 4

    C.    Kennametal's Shift And Break Schedules ............................................... 4

    D.    The Named Plaintiffs ............................................................................... 6

        1.    Robert Grayer........................................................................... 6

        2.    Brian Morton............................................................................ 7

IV.   PROCEDURAL POSTURE ............................................................................. 9

V.    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION................................. 10

VI.   LAW AND ARGUMENT ................................................................................. 10

    A.    Rule 23's Prerequisites For Class Certification ................................... 10

    B.    The Elements Of Plaintiffs' Claims ...................................................... 12

    C.    Plaintiffs Cannot Satisfy Their Burden Of Proof With Respect  To Any Of Rule 23's Prerequisites ...................................................................... 13

        1.    Plaintiffs Cannot Satisfy The Commonality Prong Because A Classwide Proceeding Will Not Generate Common Answers To Any Proposed Common Questions........................................... 13

    a.    Plaintiffs Fail To Identify The Issues Of Liability And Damages........................... 15

    b.    Plaintiffs Offer No Common Proof To Adjudicate The Issues Of Liability And Damages As To All Workers .................................................................................... 16

        2.    Plaintiffs Cannot Satisfy The Adequacy Prong Because  Grayer And Morton Are Not Adequate Class Representatives ............................ 19

        3.    Plaintiffs Cannot Satisfy The Typicality Prong Because Morton's Claims Are Not Typical Of The Claims Associated With The Proposed Class ........................................................................ 20

- i -

          4.      Plaintiffs Cannot Satisfy The Numerosity Prong Because Joinder Is Not Impracticable .......................................................................................... 20

    D.     Plaintiffs Cannot Satisfy Their Burden Of Proof With Respect To  The Rule 23(b) Prerequisites ........................................................................................ 22

          1.      Individual Issues Predominate ................................................................ 22

          2.      A Class Action Is Not A Superior Method To Resolve The Case ........... 24

VII.    CONCLUSION ........................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Am. Elec. Power, Inc.*,
No. 2:12-CV-00243, 2012 WL 3260406 (S.D. W. Va. Aug. 8, 2012) ...................................24

*Allen v. Bd. of Pub. Educ. for Bibb Cty*,
495 F.3d 1306 (11th Cir. 2007) ...........................................................................................12

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) .........................................................................................19, 20

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997).............................................................................................................22

*In re Bank of Am. Wage & Hour Empl. Litig.*,
Case No. 10-MD-2138-JWL, 2012 U.S. Dist. LEXIS 140701................................................16

*Bassett v. Tennessee Valley Auth.*,
No. 5:09-CV-00039, 2013 WL 2902821 (W.D. Ky. June 13, 2013)......................................12

*Beattie v. Century Tel., Inc.*,
511 F.3d 554 (6th Cir. 2007) .........................................................................................11, 20

*Calderone v. Scott*,
No. 2:14-519-FtM-PAM-CM, 2017 WL 5444190 (M.D. Fla. Feb. 27, 2017) ........................15

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ................................................................................................26

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)......................................................................................................1, 22

*Davis v. Cintas Corp.*,
717 F.3d 476 (6th Cir. 2013) ...............................................................................................25

*Ebert v. Gen. Mills, Inc.*,
823 F.3d 472 (8th Cir. 2016) ...............................................................................................23

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982)..............................................................................................................11

*Glazer v. Whirlpool Corp.*,
722 F.3d 838 (6th Cir. 2013) ...............................................................................................22

*Handford v. Buy Rite Office Products, Inc.*,
   2013-Ohio-4712, 3 N.E.3d 1245 (Ohio Ct. App. 2013) ........................12

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
   280 F.R.D. 388 (N.D. Ill. 2011) ....................................................16

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F. 3d 305 (3d Cir. 2008) .......................................................22

*Jimenez v. Lakeside Pic-N-Pac, L.L.C.*,
   No. 1:06-cv-456, 2007 WL 4454295 (W.D. Mich. Dec. 14, 2017) .........................24

*Jones-Turner v. Yellow Enterprise Sys., LLC*,
   597 F. App'x 293 (6th Cir. 2015) ...................................................24

*Levels v. Akzo Nobel Salt, Inc.*
   178 F.R.D. 171 (N.D. Ohio 1998) ...............................................20, 21

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
   711 F.3d 106 (2d Cir. 2013) ........................................................12

*Mayo v. Sears, Roebuck & Co.*,
   148 F.R.D. 576 (S.D. Ohio 1993) ...................................................26

*Phillips v. Philip Morris Companies Inc.*,
   298 F.R.D. 355 (N.D. Ohio 2014) ...................................................22

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) .......................................................11

*Ruffin, v. MotorCity Casino*,
   No. 12-cv-11683, 2014 WL 11309796 (E.D. Mich. Mar. 10, 2014), *aff'd*, 775
   F.3d 807 (6th Cir. 2015) ........................................................13, 23

*Sandusky v. Wellness Ctr, LLC. v. ASD Speciality Healthcare, Inc.*,
   863 F.3d 460 (6th Cir. 2017) .......................................................13

*Simmons v. Wal-Mart Assoc., Inc.*,
   No. 2:04- CV-51, 2005 WL 1684002 (S.D. Ohio, July 19, 2005) .........................12

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) (*en banc*) .............................................11

*Sterling v. Velsicol Chem. Corp.*,
   855 F.2d 1188 (6th Cir. 1988) ...................................................22, 23

*Sugai Prods v. Kona Kai Farms*,
   No. 97-43 SPK, 1997 U.S. Dist. LEXIS 21503 (D. Haw. Nov. 19, 1997) ..................21

*Thomas v. Speedway SuperAmerica, LLC*,
  506 F.3d 496 (6th Cir. 2007) ................................................12

*Turnage v. Norfolk S. Corp.*,
  307 F. App'x 918 (6th Cir. 2009) .........................................21

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .................................................. *passim*

*Wang v. Chinese Daily News*,
  Nos. 08-55483, 08-56740. 2013 U.S. App. LEXIS 4423 (9th Cir. Mar. 4,
  2013) ................................................................................16

*Wong v. AT&T Mobility Services LLC*,
  Case No. CV 10-8869-GW, 2011 U.S. Dist. LEXIS 125988 (C.D. Cal., Oct.
  20, 2011) ........................................................................16

*Young v. Magnequench Int'l, Inc.*,
  188 F.R.D. 504 (S.D. Ind. 1999) .........................................21

**Statutes**

29 U.S.C.A. § 207 (e)(5-7) ......................................................24

29 U.S.C.A. § 207 (h)(2) .........................................................24

Ohio Rev. Code § 4111.03...........................................................26

Ohio Rev. Code § 4111.03(A) ..................................................12

Ohio Rev. Code § 4111.10(A) ..................................................15

**Rules**

Fed. R. Civ. P. 23(a) ................................................................11

Fed. R. Civ. P. 23(a)(1)............................................................20

Fed. R. Civ. P. 23(b)(3)........................................................11, 26

## I.      INTRODUCTION

Plaintiffs Robert Grayer and Brian Morton allege that Kennametal Inc. did not pay them for all hours worked in violation of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA").  Even though collectively they held only 3 positions in 4 departments during one shift at the relevant facility during their employment with Kennametal, Plaintiffs seek to represent a class composed of hundreds of employees covering approximately 39 positions, in 8 departments, across a number of different shifts at Kennametal's Orwell facility.  Plaintiffs fail, however, to demonstrate how the claims of these workers can be adjudicated by two individuals and the facts and circumstances that pertain solely to them.  Certification of a class is an extraordinary departure from litigation involving named parties.  It is permitted only if the Court finds, after conducting a rigorous analysis, that Plaintiffs have proven by a preponderance of the evidence that each element of Rule 23 is satisfied.  The evidence Plaintiffs have presented is woefully insufficient to meet this burden.  In fact, the record evidence dictates the contrary conclusion—that class certification in this case is inappropriate.

## II.      SUMMARY OF ARGUMENT

Plaintiffs' efforts to establish the stringent requirements for Rule 23 class certification fail for six reasons.

First, Plaintiffs oversimplify their evidentiary burden under Rule 23.  Remarkably, Plaintiffs do not attempt to address or even acknowledge the Supreme Court's seminal cases regarding Rule 23 class certification—*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)—and fail to meet the high burdens and rigorous analyses those cases require.

Second, Plaintiffs fail to show that the alleged requirement to perform unpaid compensable work can be established using common proof.  While Plaintiffs claim that all workers were subject to the same policies, they ignore the individualized practical application of those policies to each worker.  To be sure, the record is replete with evidence demonstrating how

workers had varied experiences regarding the application of Kennametal's shift overlap policies, their individual break schedule, the activities in which they chose to engage during their breaks, and ultimately their compliance with Kennametal's policies and procedures about reporting any missed breaks.

Third, Plaintiffs cannot demonstrate that they can adequately represent this class because of the extensive diversity between Plaintiffs and the rest of the purported class.

Fourth, Plaintiffs cannot demonstrate that their claims are typical of the class with whom they proposed to represent.

Fifth, Plaintiffs fail to show that their claims are capable of classwide resolution (*Dukes*) or that a common method to resolve damages exists (*Comcast*). Given the demonstrated variance amongst the workers' experiences, resolving whether and to what extent an individual performed unpaid compensable work will require individualized determinations examining each worker's activities, on a shift-by-shift basis, to evaluate compensable versus non-compensable time. And, in the event that an individual performed uncompensated work during any particular shift, individualized defenses would apply. The multiple layers of individualized inquiries alone make class certification inappropriate in this case.

Finally, Plaintiffs do not explain how this case could conceivably be tried by a jury without requiring hundreds of mini-trials and, therefore, fail to demonstrate that a class action is the superior method by which to adjudicate their claims. The record is replete with evidence as to how the workers' experiences differ sharply. And Plaintiffs offer no means by which they can extrapolate the individualized facts that are specific to one testifying individual to another non-testifying individual to establish liability and rebut individualized defenses. Nor can they. The myriad of individualized issues makes clear that a class action would not be manageable.

## III.    SUMMARY OF FACTUAL BACKGROUND[1]

### A.    Nature And Structure Of Kennametal's Orwell Facility

Kennametal's facility located in Orwell, Ohio ("Orwell") manufactures various types of tungsten carbide inserts pursuant to both standard and customer orders.[2]  To accomplish its manufacturing goals, Orwell is divided into seven distinct departments: (1) Pressing (which includes sub-departments of pressing, tip set, sintering, Vargas, and die crib); (2) Periphery Grind; (3) Mill 1; (4) Coating (which includes sub-departments of pre-coating, post-coating, and PVD/CVD coating); (5) Quality and Inspection; (6) Mark, Pack and Lid;  and (7) Shipping.[3] Orwell also has a Maintenance Department, which is not involved in the manufacturing process.[4] The inserts generally proceed through each of these seven distinct departments and various sub-departments during the manufacturing process.[5]

Each of these departments provides a unique role in the manufacturing process.  As such, each department employs different hourly positions requiring specialized skills; uses different machines; has different training requirements; and is managed by different management personnel.[6]  Overall, Orwell employs over 300 hourly workers in approximately 39 different and specialized positions.[7]  During the period from January 2014 through June 2016 (the "Relevant

---

[1] Defendant  references and incorporates herein it's Appendix to its Motion for Decertification. *[Dkt. 113].* Any additional exhibits and testimony not contained in it's Appendix to its Motion for Decertification are included in the Supplemental Appendix filed contemporaneously with this Brief in Opposition.

[2] Jackson Dep. at 28:23-29:7; Klotz Dep. at 20:15-21.

[3] Klotz Dep. at 23:12-13.

[4] The Maintenance Department maintains the various machines throughout the Orwell plant.  Klotz Dep. at 27:24-25; 103:15-21.

[5] For a full description of the manufacturing process and job requirements, Kennametal incorporates by reference pages 4-11 of its Brief in Support of Defendant's Motion to Decertify FLSA Collective Action [ECF No. 112].

[6] For a full description of the manufacturing process and job requirements, Kennametal incorporates by reference pages 4-11 of its Brief in Support of Defendant's Motion to Decertify FLSA Collective Action [ECF No. 112]; see also Crites Dep. at 48:24-49:3 (the positions she held were different); Gilmore Dep. at 43:13-44:5 (same); DeCapito Dep. at 47:23-48:1; 56:20-22; 57:15-18 (all positions within the plant are different); Demchak Dep. at 19:13-16; 22:10-18; 35:4-7 (generally, all positions are different and require specific training); Jackson Dep. at 26:16-24; 27:11-13 (same); Mancini Dep. at 18:8-12 (the positions he has held are different); Morton Dep. at 79:1-12 (same); Roni Miller Dep. at 26:12-16; 28:15-20; 38:11-14 (generally all positions are different and require different training); Ritter Dep. at 21:18-22:11 (press operator and grinder positions are different and require different training).

[7] For a full description of the different positions, Kennametal incorporates by reference pages 4-11 of its Brief in Support of Defendant's Motion to Decertify FLSA Collective Action [ECF No. 112].

- 3 -

Time Period")[8] Orwell was managed by a Plant Manager, Value-Stream Managers, Front-line

Supervisors, and Team Leads.[9]

**B.    Kennametal's Policies And Procedures Regarding Timekeeping And Breaks**

Kennametal maintains an Orwell Employee Handbook which sets forth, among other

policies, the Time Clock Procedures that employees are required to follow.[10]   Specifically, the

Time Clock Procedures regarding missed break periods states in relevant part:

> Employees are not required to punch in and out for scheduled,
> unpaid break periods (if applicable).  ***However, if an Employee is
> not able to take or complete a full scheduled, unpaid break
> period; he or she must notify the appropriate
> Supervisor/Manager immediately. A Missed Punch Form[11] must
> be completed and submitted within 24 hours so that the
> Employee's time may be appropriately corrected by the
> Supervisor or Manager.***
>
> Employees are not required to punch in and out for scheduled, paid
> break or meal periods.
>
> ***If an Employee discovers that there is an error in his or her pay
> check, it should be immediately reported to his or her
> Supervisor/Manager as soon as possible so that any necessary
> corrections may be made.[12]***

**C.    Kennametal's Shift And Break Schedules**

The Orwell employees work a shift schedule.  There are two primary shift schemes:  the

8-hour shift scheme, and the 12-hour shift scheme.[13]  Prior to the Relevant Time Period, the shift

schedule for Monday through Friday for the 8-hour shifts was:  7:00 a.m. to 3:00 p.m.; 3:00 p.m.

to 11:00 p.m.; and 11:00 p.m. to 7:00 a.m.[14]   During this shift schedule, the 8-hour shift

---

[8] *See,* Klotz Dep. at 116:11-15.
[9] For a full description of managerial hierarchy and job duties at the Orwell plant, Kennametal incorporates by reference pages 4-5 of its Brief in Support of Defendant's Motion to Decertify FLSA Collective Action [ECF No. 112].
[10] Grayer Deposition Exhibit 4 at page 92.
[11] *See e.g.*, Jackson Dep. Exhibit 4.
[12] Grayer Deposition Exhibit 4 at page 94 (emphasis added).
[13] Starr Dep. at 24:1-7.
[14] Starr Dep. at 23:1-12.

employees received two 15-minute breaks and a 20-minute lunch break.[15]  All of these were paid breaks.[16]

In or around July 2014, Orwell changed its shift schedules to allow a 20-minute shift overlap, which remained in effect until June 19, 2016.[17]  During this time, the shift schedule for Monday through Friday for the 8-hour shifts was:  6:40 a.m. to 3:00 p.m.; 2:40 p.m. to 11:00 p.m.; and 10:40 p.m. to 7:00 a.m.[18]  As such, the start time for each shift overlapped the previous shift by 20 minutes.  During this shift schedule, the 8-hour shift employees received one 20-minute meal period and one 20-minute break.[19]  The meal period was paid and the break was unpaid.[20]

Following the elimination of the 20-minute shift overlap in June 2016, the shift schedule for Monday through Friday for the 8-hour shifts returned to its previous schedule (*i.e.,* 7:00 a.m. to 3:00 p.m.; 3:00 p.m. to 11:00 p.m.; and 11:00 p.m. to 7:00 a.m.).[21]  At this time employees were paid for all breaks.[22]  This is the current shift and break schedule at the Orwell facility.[23]  The 12-hour shift employees' shift schedule was 6:40 a.m. to 6:40 p.m.; and 6:40 p.m. to 6:40 a.m. and never changed before, during, or after the implementation of the 20-minute shift overlap.[24]  The 12-hour shift employees receive three 20-minute break periods, all of which are paid.[25]

---

[15] Starr Dep. at 23:13-16.
[16] Starr Dep. at 23:21-25.
[17] Gambatese Dep. at 31:12-22.
[18] Starr Dep. at 29:5-8.
[19] Starr Dep. at 29:9-12; 43:22-44:4.
[20] Starr Dep. at 43:22-44:4.
[21] Starr Dep. at 39:3-12.
[22] Starr Dep. at 39:16-25.
[23] Starr Dep. at 39:3-40:2.
[24] Starr Dep. at 30:9-12; 45:20-24.
[25] Starr Dep. Exhibit 4, pg. 1.

### D.  The Named Plaintiffs

#### 1.  Robert Grayer

Robert Grayer ("Grayer") has been employed by Kennametal since 2004.[26]  During this time, Grayer has held three positions:  honing operator, set up operator, and periphery grind operator.[27]  Grayer admitted that his positions were different from one another.[28]  For the majority of his employment, Grayer has worked on the third shift.[29]  Throughout his employment, Grayer has had multiple different supervisors and team leads including:  Pete Cole, Dave Rickey, Dennis Starr, David Bell, and Karen Johnson.[30]

Grayer was scheduled to receive two breaks, and has always taken Group 2 breaks.[31]  On the third shift, his lunch break was from 4:10 to 4:30 a.m.[32]  Grayer admitted that he took his breaks the majority of the time.[33]  During his breaks, Grayer sat in his car, ate chips, smoked a cigar, or read a book.[34]  Grayer admitted that "everybody pretty much does their own thing" during breaks.[35]  At times, Grayer worked through his breaks, although he claims that it was his choice to do so.[36]  He admitted that he was never required to work through a break.[37]  He further admitted that he never informed anyone at Kennametal, including his supervisor, that he worked through a break.[38]  Grayer contends that he was not aware of Kennametal's policy to complete a missed punch form if he missed a break.[39]  Grayer admitted that when he took his breaks, he was never interrupted during those breaks.[40]

---

[26] Grayer Dep. at 11:13-15.
[27] Grayer Dep. at 18-22-21:10; 88:19-22.
[28] Grayer Dep. at 78:2-79:4.
[29] Grayer Dep. at 21:16-18; 22:1-10.
[30] Grayer Dep. at 29:7-17; 49:6-20; 82:9-19; 92:19-23.
[31] Grayer Dep. at 69:19-22.
[32] Grayer Dep. at 53: 23-25; 70:6-10.
[33] Grayer Dep. at 80:19-81:4.
[34] Grayer Dep. at 60:15-61:1; 61:23-62:11; 70: 11-14; 76:2-24.
[35] Grayer Dep. at 75:23-76:1.
[36] Grayer Dep. at 80:8-18.
[37] *Id.*
[38] Grayer Dep. at 80:19-81:4.
[39] Grayer Dep. at 100:3-8.
[40] Grayer Dep. at 97:6-10.

The sole basis for Grayer's claims against Kennametal is that he was not paid for the 20 minutes associated with the shift overlap even though he was clocked in during that time.[41] Grayer does not contend that he performed any off-the-clock work.[42]  None of the 17 deposed Plaintiffs claim that they worked off the clock.[43]  Because Grayer worked the third shift, he received shift premium pay.[44]  In addition, Grayer consistently received overtime pay every week during the relevant time period.[45]

**2.    Brian Morton**

Brian Morton ("Morton") has been employed by Kennametal since 2007.[46]  During the Relevant Time Period, Morton was employed by Kennametal as a Press Operator in or around 2014;[47] as a Sinter Separator in or around 2015;[48] and as a Mill 1 Operator in or around 2016 (his current position).[49]  Morton admitted that these positions were different from one another and each required specific training.[50]  For the majority of his employment, Morton has worked on the third shift.[51]  During the Relevant Time Period, Morton has had multiple different supervisors and team leads including Dave Bell, Dennis Starr, Dave Stiles, and Gregory James.[52]

As a third-shift employee, Morton was scheduled to work 11:00 p.m. to 7:00 a.m.  During this shift overlap his start time shifted to 10:40 p.m.  His 15-minute break was scheduled from 1:30 a.m. to 1:45 a.m. and his 20-minute break was scheduled from 4:10 a.m. to 4:30 a.m.[53]  Morton admitted that he always took his breaks.[54]  The only exception that he could recall was

---

[41] Grayer Dep. at 49:1-4.
[42] Grayer Dep. at 48:23-25; 81:20-82:1.
[43] *See, e.g.,* Mancini Dep. at 12:1-8; Roth Dep. at 78:19-24; Ritter Dep. at 10:13-17; Crites Dep. at 96:13-22; Demchak Dep. at 58:9-59:11; Shipman Dep. at 30:25-31:7; Jackson Dep. at 18:19-19:8.
[44] *See,* Grayer pay records at Grayer Dep. Exhibit 5.
[45] *Id.*
[46] Morton Dep. at 71:10-12.
[47] Morton Dep. at 76:2-11; 78:2-7.
[48] Morton Dep. at 78:2-20.
[49] Morton Dep. at 78:21-25.
[50] Morton Dep. at 79:1-12.
[51] Morton Dep. at 60:23-61:4; 102:1-7; 105:14-17; 110:4-111:4.
[52] Morton Dep. at 27:1-4; 37:24-38:11; 83:23-84:4.
[53] Morton Dep. at 117:1-6; 118:15-17.
[54] Morton Dep. at 121:22-122:14.

when he voluntarily chose to work through his break more than five years ago.[55]  Morton, however, never informed his supervisor that he missed this break.[56]  Morton admitted that employees can "do whatever [they] want[ed]" during both breaks.[57]  For his breaks, Morton went out to his vehicle where he either ate or took a nap.  Morton admitted he never performed work during his breaks and his breaks were never interrupted with the exception of one occasion where there was a gas leak.[58]  Morton has been paid for all overtime that he has worked.[59]  Because Morton worked the third shift, he received shift premium payment, and often times worked and received overtime pay.[60]

Morton's claims against Kennametal are based on:  (1) his contention that he was not paid for the 20 minutes associated with the shift overlap even though he was clocked in during that time; (2) his contention that regardless of the hours he worked on Saturdays, he had to come in 20 minutes early and did not receive pay for the 20 minutes; and (3) his contention that he has not received his full breaks throughout his employment (*i.e.,* since 2007).[61]  In regard to his second claim, Morton asserts that he worked his regularly scheduled 8-hour shift on Saturday, but claims 20 minutes was automatically deducted.[62]  He also claims that regardless of the amount of hours he worked on Saturday, he was not paid for the 20 minutes.[63]  However, Morton admitted that during a meeting with his supervisor, he was informed that he did not have to come in 20 minutes early on Saturdays.[64]  In support of his third claim, Morton claimed that employees are required to "leave on our break from our [work] area at the time when our break starts, and we have to be back at our assigned area, work area, when break ends," and cannot be late

---

[55] *Id.*
[56] *Id.*
[57] Morton Dep. at 22:18-25:3.
[58] Morton Dep. at 128: 22-25; 129:1-130:9.
[59] Morton Dep. at 107:3-7; 111:5-10.
[60] *See,* Morton Dep. Exhibit 5.
[61] Morton Dep. at 20:4-10; 21:9-22:16; 54:3-57:22.
[62] Morton Dep. at 55:12-16; 56:3-57:1.
[63] Morton Dep. at 62:1-21; 63:10-14.
[64] Morton Dep. at 52:10-25.

returning to their work area.[65]  Morton, however, admitted that in his case he was paid for all of his breaks, thus mooting any concern about the start and end time of his breaks.[66]

## IV.   PROCEDURAL POSTURE

On June 7, 2017, Plaintiffs filed a complaint alleging that Kennametal failed to pay the hourly manufacturing workers at Orwell for all hours worked in violation of the Fair Labor Standards Act (FLSA) and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03.  *See* Complaint (Dkt. No. 1).  Plaintiffs contend that hourly-paid manufacturing workers worked an 8-hour shift, were provided with two 20-minute breaks, but were required to work an extra 20 minutes before their 8-hour shift.  *Id.*  And they were only paid for 8 hours of work per day instead of 8 hours and 20 minutes of work per day.  *Id.*

On September 13, 2016, the Court granted Plaintiffs' motion for conditional certification of Plaintiffs' FLSA claims, with no opposition from Defendant.  *See* Dkt. No. 48.  On October 3, 2016, the Court approved the parties' proposed notice, which was directed to "all current and former hourly employees of Kennametal Inc. ("Kennametal") who worked at Kennametal's facility in Orwell, Ohio between January 2014 and June 2016 and who were subject to a 20-minute early start work schedule."  *See* Dkt. No. 55-1.  Shortly thereafter, the Court-facilitated notice was sent to approximately 360 individuals.  As of the close of discovery, 192 workers signed and filed consent to join forms.  *See Opt-In Consent Forms* (Dkt. Nos. 3-4, 6, 12, 14-15, 17-18, 20-47, 50-54, 56-57, 60-80, 82-83, 86-87, 103).

The parties engaged in extensive fact discovery, including taking deposition testimony from 21 witnesses, the production of over 75,000 documents, consisting of over 250,000 pages, and 128 Plaintiff responses to Kennametal's Discovery Questionnaire.  Despite this extensive discovery, Plaintiffs cannot identify a common, unlawful policy or practice to deny overtime or to require the workers to do compensable work without pay.

---

[65] Morton Dep. at 25:8-17; see also 30:10-31:8; 34:17-24.
[66] Morton Dep. at 22:18-25:7; 37:4-13; 49:22-50:1; 77:9-18.

## V. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Before the Court is Plaintiffs' motion for class certification (Dkt. No. 109), which was filed on December 8, 2017.  Plaintiffs seek to certify a class composed of:

> All current and former hourly employees of Kennametal Inc. ("Kennametal") who worked at Kennametal's facility in Orwell, Ohio between January 2014 and June 2016 and who were subject to a "shift overlap" or early start work schedule.

*Id.*  Critically, as alleged in the Complaint, Plaintiffs' claims regarding unpaid wages and overtime all relate to the time period during which Kennametal employed a 20-minute shift overlap for individuals who worked an 8-hour shift.  *See* Dkt. No. 1 at ¶¶ 21-32.  Specifically, Plaintiffs contend that Kennametal's " practice and policy of not paying Plaintiffs and other similarly situated manufacturing employees overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked over 40 each workweek violated the OMFWSA, R.C. 4111.03."  *See* Complaint (Dkt. No. 1) at ¶ 47.

In support of their contention that their claims are appropriate for class treatment, Plaintiffs allege:  "There are questions of law or fact common to the Ohio Class, including but not limited to the following:

(a)    whether Defendant failed to pay overtime compensation to its manufacturing employees for hours worked in excess of 40 each workweek; and

(b)    what amount of monetary relief will compensate Plaintiffs Grayer and Morton, and other members of the class for Defendant's violation of R.C. 4111.03 and 4111.10.

*See* Complaint (Dkt. No. 1) at ¶ 37.

Plaintiffs' motion should be denied because Plaintiffs have failed to establish the requirements set forth in Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure.

## VI. LAW AND ARGUMENT

### A. Rule 23's Prerequisites For Class Certification

The Supreme Court has made clear that a class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart*

*Stores v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  Before certifying a class, the district court must engage in a "rigorous analysis" of the plaintiff's ability to meet the requirements of Federal Rule of Civil Procedure 23.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*).  Rule 23 is more than a mere pleading standard, and a party seeking class certification must demonstrate sufficient facts to meet its requirements.  *Dukes*, 131 S. Ct. at 2551.

To obtain class certification, Plaintiffs must first establish that (1) the class is so numerous that joinder of all members is impracticable (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the individual representative parties are typical of the claims and defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011); *Falcon*, 457 U.S. at 160-61 ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable.").

The analysis under Rule 23(b) is even more demanding.  Plaintiffs rely on Rule 23(b)(3), which provides that a class action may be maintained only where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy."  *Dukes*, 131 S. Ct. at 2549 (citing Fed. R. Civ. P. 23(b)(3)).  The Court has "substantial discretion" in evaluating whether Plaintiffs have met their burden of proof in the interest of efficiently managing its docket.  *See Beattie v. Century Tel., Inc.*, 511 F.3d 554, 559 (6th Cir. 2007).  Where a party fails to introduce sufficient evidence to demonstrate each of the four prerequisites of Rule 23(a) and the applicable perquisite of Rule 23(b), class certification must be denied.

The Supreme Court requires district courts to closely scrutinize the class allegations and consider whether a trial on a representative basis can generate common answers that are likely to resolve the case.  *Dukes,* S.Ct.  at 2551-52 (noting that it is "frequently" the case "that 'rigorous

analysis' will entail some overlap with the merits of plaintiff's underlying claim.").  Here, the merits of Plaintiffs' Ohio claims are deeply enmeshed in the Rule 23 determination and, therefore, this Court should consider those merits when conducting its "rigorous analysis."

Plaintiffs fail to meet the prerequisites of Rule 23(a) and Rule 23(b).  Their request for class certification should be denied.

**B.      The Elements Of Plaintiffs' Claims**

To establish a claim that all compensable time was not paid, an employee must show that: (i) the employee worked hours that were not credited; (ii) the employer "suffered or permitted" the work to be done; and (iii) had the hours been credited, the employee would have been entitled to compensation for some or all of the hours.  *Allen v. Bd. of Pub. Educ. for Bibb Cty,* 495 F.3d 1306, 1314-15 (11th Cir. 2007).  Ohio law has the same requirements as the FLSA. See Ohio Rev. Code § 4111.03(A) (employer required to pay overtime for hours worked in excess of 40 hours in one workweek, in the manner and methods provided in and subject to the Fair Labor Standards Act); *Thomas v. Speedway SuperAmerica, LLC,* 506 F.3d 496, 501 (6th Cir. 2007) (court need consider only federal law on plaintiffs' overtime claim as "the Ohio statute expressly incorporates the standards and principles found in the FLSA.");  *Handford v. Buy Rite Office Products, Inc.,* 2013-Ohio-4712, 3 N.E.3d 1245 (Ohio Ct. App. 2013) courts look to cases interpreting the FLSA in interpreting the Ohio Minimum Fair Wage Standards Act).

Significantly, there can be no FLSA or state claim for overtime unless an employee works more than forty hours per week.  *Handford,* 2013-Ohio-4712, 3 N.E.3d at 1250( pursuant to the OMFWSA an employee has the burden of showing that he or she performed work for which he or she was not adequately compensated); *Simmons v. Wal-Mart Assoc., Inc.,* No. 2:04-CV-51, 2005 WL 1684002, at *19-20 (S.D. Ohio, July 19, 2005) (applying federal wage and hour case law to plaintiff's OMFWSA claim, court held plaintiff failed to show that she was entitled to unpaid wages or overtime compensation) (*Bassett v. Tennessee Valley Auth.,* No. 5:09-CV-00039, 2013 WL 2902821, at *10 (W.D. Ky. June 13, 2013); *see also Lundy v.*

*Catholic Health Sys. of Long Island, Inc.,* 711 F.3d 106, 115 (2d Cir. 2013) (rejecting "gap time" claims where employees seek compensation for unpaid non-overtime "straight time"). Furthermore, paid meal breaks can be offset against alleged unpaid overtime work, and thereby avoid a finding that the FLSA was violated. *Ruffin, v. MotorCity Casino,* No. 12-cv-11683, 2014 WL 11309796 (E.D. Mich. Mar. 10, 2014), *aff'd,* 775 F.3d 807, 811 (6th Cir. 2015) (20 minute paid meal period off-set plaintiffs' time spent attending unpaid, but compensable roll-call meeting, and therefore plaintiffs not entitled to relief on their overtime claim).

**C.    Plaintiffs Cannot Satisfy Their Burden Of Proof With Respect To Any Of Rule 23's Prerequisites**

**1.    Plaintiffs Cannot Satisfy The Commonality Prong Because A Classwide Proceeding Will Not Generate Common Answers To Any Proposed Common Questions**

Rule 23(a)(2) requires Plaintiffs to prove that there are questions of fact and law common to the class. *Sandusky v. Wellness Ctr, LLC. v. ASD Specialty Healthcare, Inc.,* 863 F.3d 460 (6th Cir. 2017) (only when the same evidence will suffice for each member to make a prima facie showing, will there be a common question)

Plaintiffs seek certification of all hourly-paid Orwell workers who were subject to a shift overlap or early start. Plaintiffs contend that commonality is established because there are "*many* questions, both legal and factual, that are common to all Class members."[67] Plaintiffs claim that these "common questions" satisfy the Rule 23(a)(2) requirement; however, Plaintiffs' commonality analysis misses the mark.

The Supreme Court has made clear that articulating "common questions" alone are not sufficient to establish commonality. *Dukes,* 131 S. Ct. 2541. To be sure, the Supreme Court made clear in *Dukes* that:

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . This does not mean merely that they have all suffered a violation of the same provision of the law . . . Their claims must depend upon a common

---

[67] For the list of 10 questions Plaintiffs allege are common to the class, see Plaintiffs' Motion for Certification page 10 *[Dkt. 109]*.

> contention—for example, the assertion of discriminatory bias on the part of the same supervisor. ***That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.***

*Id.* at 2551 (emphasis added) (internal quotation marks and citations omitted).

In a nutshell, what matters is not whether common questions, "even in droves," can be raised but the capacity of the class proceeding to generate "common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original).  Plaintiffs have not, and cannot meet, this burden.  Plaintiffs fail to identify the issues of liability and damages they will need to prove to each class member for each week he or she worked (let alone how these issues generate common answers), and Plaintiffs fail to identify any common evidence that could prove any of the elements for all putative class members.

As discussed below, whether a worker at the Orwell facility can prove the elements of his or her claim depends entirely on the individual circumstances that are unique to that worker and, importantly, to any particular shift at issue.  Likewise, whether Kennametal has a valid defense to a worker's claim will depend on the facts that apply solely to that individual worker and the particular shift at issue.  Even looking at just one worker, assuming that worker could show unpaid compensable time on one particular shift does not mean they can show the same entitlement to any other shift.  Rather, each shift within a workweek would have to be reviewed, including an assessment of any defenses applicable to any such shifts, with an eventual determination as to whether there was sufficient total unpaid compensable time within that one worker's workweek to entitle the worker to overtime compensation.  For this to proceed as a class action, the complexity and individuality prevalent in one worker's claim would then be multiplied across the entirety of the class members.  Accordingly, Plaintiffs' claims are not appropriate for class treatment.

### a.    Plaintiffs Fail To Identify The Issues Of Liability And Damages

As a preliminary matter, Plaintiffs do not identify the issues of liability and damages they will need to prove for each class member for each week that he or she worked.  Plaintiffs cannot escape the analysis of their underlying claims.  The issues of liability that Plaintiffs must prove are:

1.    Whether each worker was subject to the 20-minute shift overlap

2.    For each day when a worker was subject to the 20-minute shift overlap, Plaintiffs must prove:

> ➤ The worker's actual start and stop time (i.e., what time the worker clocked in/clocked out versus commenced/stopped working)
>
> ➤ Whether, and to what extent, the worker took any breaks (i.e., 20 minutes or longer)
>
> ➤ Whether, and to what extent, the worker was interrupted during any breaks
>
> ➤ If the worker missed (in whole or in part) any breaks, whether the worker complied with Kennametal's policies and procedures to report the missed break
>
> ➤ Whether the worker's supervisor had actual or constructive knowledge of the alleged uncompensated work

Further, even after these individualized issues are resolved, there would be key issues of liability remaining, including, but not limited to:

- Whether, and to what extent the worker performed compensable work during any unpaid breaks.

- Whether individual defenses apply, including defenses related to offsets for paid meal breaks, shift premiums, and overtime compensation beyond what the OMFWSA 68 and the FLSA requires.

- Whether the uncompensated work time was sufficient to cause a particular employee a loss of overtime compensation in a particular workweek.

These remaining liability questions are sufficient to defeat class certification.  *See, e.g.,*

*Calderone v. Scott,* No. 2:14-519-FtM-PAM-CM, 2017 WL 5444190, at *5 (M.D. Fla. Feb. 27,

---

[68] An employer who may have paid an employee less wages than the employee is entitled under section 4111.03 of the Ohio Wage Act, is liable for the amount of overtime wage rate, *less* any amount actually paid to the employee by the employer.  Ohio Rev. Code § 4111.10(A).

2017) (denying certification because there were no claims under the FLSA common to the purported class).

In comparable wage and hour cases, courts have found similar proposed classes fail to meet Rule 23's commonality requirements. *See, e.g., Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 400-01 (N.D. Ill. 2011) (denying certification in case alleging uncompensated pre- and post-shift work, among other claims, because individual circumstances concerning employer's knowledge of work and *de minimis* defense cannot be determined on a classwide basis); *Wang v. Chinese Daily News,* Nos. 08-55483, 08-56740. 2013 U.S. App. LEXIS 4423 at *11-15 (9th Cir. Mar. 4, 2013) (applying *Dukes* and finding that with respect to a proposed class of about 200 reporters working in a single facility asserting wage and hour claims, material differences exist, preventing a finding of commonality under Rule 23(a)); *In re Bank of Am. Wage & Hour Empl. Litig.,* Case No. 10-MD-2138-JWL, 2012 U.S. Dist. LEXIS 140701, at *60 (D. Kan. Sept. 27, 2012) (denying class certification of state law compensable time and meal period claims because even if plaintiffs' claims depended on common contentions capable of class wide resolution, any "common contentions that might exist [were] overpowered by individual issues"); *Wong v. AT&T Mobility Services LLC,* Case No. CV 10-8869-GW, 2011 U.S. Dist. LEXIS 125988, at **6-20 (C.D. Cal., Oct. 20, 2011) (applying *Dukes* and denying class certification because resolution of exemption and meal break issues would require individualized analysis).

### b. Plaintiffs Offer No Common Proof To Adjudicate The Issues Of Liability And Damages As To All Workers

The two Plaintiffs—Grayer and Morton—would have to attempt to prove the elements of liability and damages of their unpaid wage claims by their own testimony and documents that are specific to themselves. As discussed below, each Plaintiff's sworn testimony—and the testimony of putative class members—reveals varied experiences with respect to Kennametal's shift overlap policy.

For example, the threshold question of whether a worker was subject to the shift overlap cannot be answered by common proof.  The extensive discovery in this matter reveals that the workers had varied experiences as to whether, and what extent, they were subject to the shift overlap.  Just a few examples:

- Robert Ritter did not work a shift overlap on 12 hour-24/7 B shift.[69]

- Gregory James was paid on a salary basis as a Production Supervisor, not entitled to overtime, and not subject to a shift overlap from  January 2015 to March 2016.[70]

- Valerie Gambos admits she was required to work a shift overlap "sometimes" – not all the time.[71]

And they had varied experiences as to how the implementation of the shift overlap was communicated to them:

- Grayer recalls a meeting where he was informed of the shift overlap but does not recall when or what was said.72

-  Morton recalls plant manager, Maynard Grieves, conducting a plant wide meeting to discuss the shift overlap.73

- Rosemary Rice remembers being advised of the shift overlap during a daily and regularly scheduled standup meeting.[74]

These varied experiences regarding the application of the shift overlap call into question Plaintiffs' request for class treatment.

The effect the shift overlap had on the workers' hours worked also cannot be established by common proof.  Plaintiffs fail to provide any evidence that they are aware of the hours worked by any other Plaintiff.  Nor can they.  Both Plaintiffs worked third shift and, therefore, it is inconceivable they could know the hours individuals from other shifts (or even other departments) worked.

---

[69] Ritter Dep. at 18:9-14; 37:8-16.
[70] James Dep. at 45:22-46:2; 87:20-88:16; 46:20-23; 111:15-19; 112:13-114:25.
[71] Valerie Gambos Questionnaire #1.
[72] Grayer Dep. at 55:21-57:25.
[73] Morton Dep. at 41:1-12; 42:3-43:19.
[74] Rice Dep. at 62:8-65:7.

Taking a deeper dive into liability and damages, testimony from Plaintiffs and Discovery Opt-Ins demonstrate that the workers' experiences with their breaks cannot be established by common proof.  For example, some individuals never missed any of their breaks.[75]  Some individuals occasionally missed a break; however, they were able to take their full break later in the workday.[76]  Other individuals (for one reason or another) did not make up their missed breaks.  These individuals had varied experiences as to whether they followed Kennametal's policies and procedures for reporting missed breaks.[77]  The individuals who failed to follow Kennametal's policies for reporting missing breaks had varied explanations and excuses for their non-compliance.[78]

The record is clear—the testimony and documentary evidence relating to one worker cannot establish any element of liability or damages of another worker.  Plaintiffs cannot identify questions capable of classwide resolution, which will resolve their claims in one stroke, as Rule 23 requires.  Accordingly, Plaintiffs cannot meet the commonality prerequisites of Rule 23.

---

[75] Jackson Dep. at 145:10-11 (Never missed a break); Roni Jo Miller Dep. at 79:25-80:25 (same); James Dep. at 74:5-10 (same); Demchak Dep. at 53:23-54:14 (same); Crites Dep. at 73:6-8; 78:11-13 (same); DeCapito Dep. at 94:5-6 (same); Roth Dep. at 57:17-22 (same); Gilmore Dep. at 73:17-19 (same).

[76] Jackson Dep. at 144:20-145:5 (If work carried over into her break, her foreman allowed her to extend her break time so that she received her full break); Shipman Dep. at 63:16-64:3 (She would move her break to a different time if needed, but she always took her full break); Rice Dep. at 42:23-45:7; 48:18-23 (She would occasionally postpone her break until later if she was in the middle of setting up her next order); Roni Jo Miller Dep. at 79:25-80:25 (would adjust the timing of her breaks if she needed to finish work during a scheduled break); Roth Dep. at 72:10-73:8 (was able to adjust timing of breaks to receive full break time if needed); Mancini Dep. at 79:5-16 (there are times when he needs to miss a scheduled break in order to fix a machine, however he would still receive his full break later in the day); Gilmore Dep. at 62:12-24; 64:14-65:20 (Gilmore has flexibility in deciding when to take her breaks, but she always takes the full break).

[77] *Compare* Roni Jo Miller Dep. at 67:14-68:3; 79:25-80:25 (she would always notify her supervisor if she had to push back her break) *with* Rice Dep. at 59:15-60:17; 61:2-11 (estimates she missed 10-15 breaks during the shift overlap period, but never informed anyone at Kennametal because it was her business to choose to skip a break); Grayer Dep. at 71:12-17; 73:5-9; 80:19-81:4; 100:3-8 (would rarely miss part of his break due to work needs but did not inform anyone at Kennametal and did not fill out a missed punch card; William Miller Dep. at 56:25-57:21; 58:4-9; 59:15-60:5 (on a rare occasion he would miss a break because he lost track of time, but did not report it to supervisors or fill out a missed punch card because he did not think it was a big deal); Morton Depo. at 121:22-122:18; 126:17-25 (believes he missed one break five years ago but did not report it because he believed breaks were voluntary); James Dep. at 136:24-137:9; 138:12-14; 139:19-21; 140:10-14 (believes he missed parts of his break because he lost track of time but did not report this to anyone at Kennametal); Ritter Dep. at 43:12-44:4; 44:10-15; 71:13-18 (has missed breaks but never reported it because it was his own decision to miss the break).

[78] See footnote 5, supra.

### 2. Plaintiffs Cannot Satisfy The Adequacy Prong Because Grayer And Morton Are Not Adequate Class Representatives

Plaintiffs seek to represent a class of "all current and former hourly employees … who worked at Kennametal's facility in Orwell, Ohio between January 2014 and June 2016 and who were subject to a 20-minute early start work schedule." *See* Dkt. No. 55-1.  Courts examine two criteria when assessing adequacy:  (1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representatives will vigorously prosecute the interests.  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

However, they cannot adequately represent this class because of the extensive diversity between Plaintiffs and the rest of the class.  Indeed, as described more fully above, in a facility that employs over 300 hourly workers, there were approximately 39 different positions, 8 departments, 3 different 8-hour shifts, 2 different 12-hour shifts (with different break schedules), numerous variations on how each employee spent their break, and many different managers and supervisors at the Orwell facility during the relevant time period.

With all of these variations, Grayer and Morton do not even come close to representing the entire class.  To the contrary, Grayer and Morton worked in only 6 of the 39 positions; in only 2 of the 8 departments; on only the third shift (for which they received a shift premium); never worked the 12-hour shift; admit that "everybody pretty much does their own thing" during breaks; and worked under different managers and supervisors.  Clearly, Grayer and Morton do not share common interests with class members employed in different positions; in departments; on the first or second shift (who do not receive a shift premium); on the 12-hour shift; or who worked under different management.

Moreover, Morton testified that one of his claims against Kennametal is that he has not received his full breaks throughout his employment (*i.e.,* since 2007).  In support of this claim, Morton alleges that employees are required to "leave on our break from our [work] area at the time when our break starts, and we have to be back at our assigned area, work area, when break

- 19 -

ends," and cannot be late returning to their work area.[79] Morton, however, admitted he was paid for all of his breaks.[80]  This claim is completely different than the class claim that they were not paid for the for the 20-minute shift overlap.  Accordingly, the Plaintiffs cannot meet the adequacy requirement of Rule 23.

### 3. Plaintiffs Cannot Satisfy The Typicality Prong Because Morton's Claims Are Not Typical Of The Claims Associated With The Proposed Class

A claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members." *Beattie*, 511 F.3d at 561.  As explained in the previous section, Plaintiff Morton alleges a separate and distinct claim from the rest of the class (that he has never received his full break), and therefore the Plaintiffs cannot meet the typicality requirements of Rule 23(a).

### 4. Plaintiffs Cannot Satisfy The Numerosity Prong Because Joinder Is Not Impracticable

Plaintiffs baldly contend that the proposed class consisting of 363 individuals presumptively makes "joinder of all members impracticable" and, on this basis alone, they declare that numerosity is satisfied.  Rule 23, however, requires more than meeting a numerical threshold.  The critical question is whether joinder would be impracticable.  Fed. R. Civ. P. 23(a)(1); *see In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 ("There is no strict numerical test" for determining numerosity because it turns on the impracticability of joinder).  The practicability of joinder depends on the size of the class, the ease of identifying its members' names and addresses, whether the class members are dispersed geographically and whether their individual claims are so small as to inhibit them from pursuing their own claims.  *Levels v. Akzo Nobel Salt, Inc.* 178 F.R.D. 171, 176 (N.D. Ohio 1998) (citations omitted).  Considering these factors, Plaintiffs have failed to establish numerosity.

Plaintiffs have offered no evidence to demonstrate that joinder would be impracticable.  Nor can they.  The class list that  Kennametal provided for notice purposes included all hourly

---

[79] Morton Dep. at 25:8-17; see also 30:10-31:8; 34:17-24.
[80] Morton Dep. at 22:18-25:7; 37:4-13; 49:22-50:1; 77:9-18.

Orwell employees employed during the relevant time period, who had not yet opted into the lawsuit.  *See* Exhibit Q.  As Plaintiffs admit in their Motion for Certification, all of these individuals reside in or have ties to Northern Ohio.  *See* Plaintiff's Brief at 17.  To be sure, 99% of the 363 potential class members reside in this Court's jurisdiction, and are readily identifiable by name and address.  *See* Exhibit Q and *Opt-In Consent Forms* (Dkt. Nos. 3-4, 6, 12, 14-15, 17-18, 20-47, 50-54, 56-57, 60-80, 82-83, 86-87, 103).  Joinder is considered more practicable than class certification where, as here, all members of the potential class reside in the same geographic areas and are easily identifiable.  *Turnage v. Norfolk S. Corp.,* 307 F. App'x 918, 923 (6th Cir. 2009) (affirming denial of class certification of thousands of class members because the class members all lived "in close geographical proximity"); *Levels*, 178 F.R.D. at 176 (denying class certification finding that "more important than numbers," joinder was feasible where all class members resided in the Cleveland area); *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 506 (S.D. Ind. 1999) denying class certification where plaintiffs presented no evidence—such as geographic dispersion or inability to locate parties—that it would be difficult to join class members); *see also Sugai Prods v. Kona Kai Farms*, No. 97-43 SPK, 1997 U.S. Dist. LEXIS 21503 at *21 (D. Haw. Nov. 19, 1997) (joinder was not impractical where 600 class members lived in the same geographic area).

Moreover, the hybrid nature of this lawsuit should factor into this Court's Rule 23 analysis.  192 members of the putative Ohio class have already joined the collective action, which further undercuts Plaintiffs' argument that joinder is impracticable. The 171 members of the putative class who elected not to opt in to the collective action have already been given ample opportunity to adjudicate their alleged wage and hour claim and affirmatively chose not to consent.  Plaintiffs do not claim notice was defective.  Instead, through their Motion, Plaintiffs seek to join into this action individuals who already made a decision not to participate in a lawsuit against Kennametal.

**D.     Plaintiffs Cannot Satisfy Their Burden Of Proof With Respect To
         The Rule 23(b) Prerequisites**

It logically follows that if Plaintiffs cannot establish a critical "common question" susceptible to a common answer based on representational proof, consistent with *Dukes*, they cannot establish that common questions predominate.  The Supreme Court has made clear that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a) requiring the court to take a "close look" at "whether common questions predominate over individual ones." *Comcast Corp.,* 133 S. Ct. at 1432 (quotation omitted); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F. 3d 305, 310-11 (3d Cir. 2008) (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997) (if "proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.").  Indeed, predominance is not met where plaintiffs cannot identify a common method of proof on a classwide basis for their claims.  *See Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988) ("[W]here no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy").

**1.     Individual Issues Predominate**

Plaintiffs suggest that the "shift overlap" practices and policies are uniform throughout the class and, therefore, common issues predominate.  Again, Plaintiffs ignore binding precedent and incorrectly state their burden.

In *Comcast*, the Supreme Court held that the questions of individual damages must be assessed as an integral part of the requirement of *Dukes*—that plaintiffs seeking class certification must "affirmatively demonstrate" with "significant proof" that class members "suffered the same injury."  *See Glazer v. Whirlpool Corp.*, 722 F.3d 838, 860 (6th Cir. 2013) (holding that "*Comcast Corp.* reaffirms the settled rule that liability issues relating to injury must be susceptible of proof on a classwide basis to meet the predominance requirement"); *Phillips v. Philip Morris Companies Inc.*, 298 F.R.D. 355, 368-69 (N.D. Ohio 2014) (denying class certification because the individualized nature of the alleged damages rendered certification

- 22 -

"impracticable");  *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) (denying certification holding that "merely advancing a question stated broadly enough to cover all class members is not sufficient under Rule 23(a)(2)").

It is beyond dispute that Plaintiffs' individual damages claims cannot be determined representationally—the amount of any potential recovery by any claimant would necessarily be determined based upon his or her own hours worked and compensation—both variables which vary from one worker to the other.  Although individualized damages claims standing alone will not defeat class certification, where, as here, the defendant's potential liability to the entire class, as well as damages, cannot be determined within a single class, the class should not be certified. *See Sterling*, 855 F.2d at 1197.

Even assuming that Plaintiffs can meet the less demanding requirement of Rule 23(a) through conclusory allegations about Kennametal's "policies and procedures," those common questions do not predominate over the individual determinations required to adjudicate liability and damages.

As stated *supra*, individualized inquiries would be required to determine liability with respect to each claim.  Documentary and testimonial evidence is needed to determine whether, and to what extent, a worker was subject to the "shift overlap" and whether and to what extent each worker took his or her full breaks.  Furthermore, it is critical to determine what activities each worker engaged in during his or her breaks to determine whether such time was compensable or uncompensable time.  These inquiries all strike at the heart of Plaintiffs' claims. Only after these individualized inquiries are undertaken can there be a determination whether each worker is entitled to any overtime.

Individualized inquiries would also be required to determine defenses for each claim.  For example, Kennametal's defenses that need to be analyzed on an individualized basis include:

> ➢ Any alleged overtime owed is offset by payment received for non-compensable meal periods.  *See Ruffin, v. MotorCity Casino*, No. 12-cv-11683, 2014 WL 11309796 (E.D. Mich. March 10, 2014), aff'd, 775 F.3d 807, 811 (6th Cir. 2015) (20 minute paid meal period off-set plaintiffs' time

spent attending unpaid, but compensable roll-call meeting, and therefore plaintiffs not entitled to relief on their overtime claim)[81];

➢ Any alleged overtime owed is offset by payment received for shift premiums. [82] 29 U.S.C.A. § 207 (h)(2) and (e)(5-7) (if an employee is paid a premium rate for working more than eight hours per day under § 207(e)(5) or working Saturdays, Sundays, holidays, or regular days of rest under § 207(e)(6) then, under § 207(h)(2), that payment may be credited toward any unpaid overtime owed);

➢ Named and Opt-In Plaintiffs failed to follow established procedures for reporting missed break or meal period time[83];

➢ Time allegedly worked was without Kennametal's actual or constructive knowledge[84]; and

➢ The amount of overtime allegedly not compensated is *de minimis.*[85]

The record is replete with evidence that certain of these defenses might apply to certain workers but might not apply to others.  These admissions raise defenses to liability not just damages.  Resolving these individualized inquiries would overwhelm any allegedly common treatment.  In any event, the Supreme Court's decision in *Comcast* makes clear that individualized damages determinations can defeat Rule 23(b)(3)'s predominance requirement.

### 2.     A Class Action Is Not A Superior Method To Resolve The Case

Where individual inquiries are necessary, a class action is not the  superior format by which to adjudicate plaintiffs' claims  *Jimenez v. Lakeside Pic-N-Pac, L.L.C.,* No. 1:06-cv-456, 2007 WL 4454295 (W.D. Mich. Dec. 14, 2017)(individual question likely to predominate where minimum wage issues depend on determination of each individual's daily hours worked and amount of pay received); *see also, Abbott v. Am. Elec. Power, Inc.*, No. 2:12-CV-00243, 2012

---

[81] "A meal period is not compensable "[a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit."  *Jones-Turner v. Yellow Enterprise Sys., LLC*, 597 F. App'x 293, 296 (6th Cir. 2015) (citations omitted) (the employee bears the burden of establishing that she performs substantial duties and spends her meal time predominantly for the employer's benefit).

[82] *See,* Grayer Dep. Exhibit 5 and Morton Dep. Exhibit 5 (pay records demonstrating that both Grayer and Morton received third shift premium pay).

[83] Morton Dep. at 121:22-122:18; 126:17-25 (Morton did not notify his supervisor when he missed a break); Jackson Dep. at 145:12-15.

[84] Rice Dep. at 44:11-20; 48:18-23 (Rice did not report her missed break to anyone at Kennametal because it was "nobody's concern" but hers.).

[85] Mancini Dep. at 82:12-17 (Mancini did not report break because "it wasn't a big deal"); Demchak Dep. at 53:23-54:14 (Demchak did no report time she missed on her break because it was not significant enough to report).

WL 3260406, at *5 (S.D. W. Va. Aug. 8, 2012) ("Because individual issues will predominate in this matter, those individualized determinations will overwhelm the common questions. Thus, the court finds that the class action format is not the superior method to address the plaintiffs' claims.")  Here, liability hinges on whether the employees performed compensable work and were not properly paid for overtime hours, if any.

The record demonstrates that the employees' experiences differed sharply.  Further, there is no classwide basis of determining whether, and to what extent, class members actually experienced unpaid compensable work in violation of the FLSA.  As such, liability cannot be proven on a classwide basis without jeopardizing Kennametal's due process right to demonstrate that some members (*e.g.,* employees who were not subject to the shift overlap for a period of time) did not actually experience an OMFWSA or FLSA violation.  *Dukes*, 131 S. Ct. at 2561 (rejecting trial-by-formal approach where defendant would be deprived of litigation individual defenses); *Davis v. Cintas Corp.*, 717 F.3d 476, 490-91 (6th Cir. 2013) ("*Dukes* made clear that [defendant] has the right to present defenses before paying any person an award of backpay");

Here, Plaintiffs have made no effort to demonstrate how this case could be manageably tried and class-wide liability or damages determinations reached.  Rather Plaintiffs argue "To date the Parties have not faced difficulties in managing the collective action that consists of over 190 employees.  There is no reason to believe that there would be difficulties in managing a class action consisting of 363 employees."  This conclusory assertion is not sufficient to sustain their burden of showing that a class action is manageable or explain how class-wide determinations can be reached as to liability and damages that *Dukes* and *Comcast* require.  Plaintiffs' thinly-veiled threat that without class certification, the "class members' claims would require 363 individual lawsuits, with concomitant duplication of proceedings, not only in state or federal trial courts but potentially in appellate courts as well" does not absolve them from meeting their burden.

To be sure, even if the Court could easily determine liability issues, it would still need to conduct an individual multi-step analysis to decide the answer to several questions proposed by

Plaintiffs, including the application of the separate and individualized defenses.  The need to determine so many individual issues renders the proposed class inefficient, unmanageable, and inferior to individual lawsuits.  *See* Fed. R. Civ. P. 23(b)(3); *see Jimenez and Abbott, supra.*

Plaintiffs also argue that "class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense and risk of pursuing their claims individually."  Plaintiffs' Brief at 19.  Notably, attorneys' fees are available to a successful plaintiff under the Ohio Minimum Fair Wage Standards Act.  O.R.C. § 4111.03.  The availability of attorneys' fees favors individual litigation over a class action.  *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 583 (S.D. Ohio 1993); *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996).  Accordingly, there is no merit to Plaintiffs' argument that plaintiffs might not pursue those claims because of the cost of individual litigation.

## VII.    CONCLUSION

For all of these reasons, Defendant Kennametal Inc. respectfully requests that this Court exercise its discretion and deny Plaintiffs' request to expand the claims at issue to encompass the state-law claims of other manufacturing employees.  Plaintiffs cannot insist that their particular experiences, consistent only with their theory of lability, are representative of the proposed class. In the absence of "common answers" to the "common questions," no class can be certified consistent with due process.

Dated: January 5, 2018                          Respectfully submitted,


                                                 */s/ James F. Glunt*
                                                 James F. Glunt (*pro hac vice*)
                                                 jglunt@reedsmith.com
                                                 Gretchen Woodruff Root (*pro hac vice*)
                                                 groot@reedsmith.com
                                                 Robert J. Tyler III (*pro hac vice*)
                                                 rtyler@reedsmith.com
                                                 Raeann Traficante (*pro hac vice*)
                                                 rtraficante@reedsmith.com
                                                 Reed Smith LLP

225 Fifth Avenue
Pittsburgh, PA  15222
Telephone:  412-288-4121/3883/4595
Facsimile:  412-288-3063

Christina E. Niro (0086272)
cniro@frantzward.com
Frantz Ward LLP
200 Public Square, Suite 3000
Cleveland, OH  44114
Telephone:  216-515-1660
Facsimile:  216-515-1650

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

The foregoing was filed electronically on January 5, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ James F. Glunt
James F. Glunt (*pro hac vice*)
*Attorney for Defendant*