UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT GRAYER and BRIAN MORTON, on behalf of themselves and all others similarly situated,** ) ) ) ) | **CASE NO.1:16CV1382** |
| Plaintiff, ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| Vs. ) ) | |
| **KENNAMETAL INC.,** ) ) | **OPINION AND ORDER** |
| Defendant. ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Defendant Kennametal Inc.'s ("Defendant") Motion to Decertify FLSA Collective Action (ECF DKT # 111) and named Plaintiffs Robert Grayer and Brian Morton's ("Plaintiffs") Motion for Class Certification Pursuant to Civil Rule 23 (ECF DKT # 109). For the following reasons, the Court denies Defendant's Motion and grants Plaintiffs' Motion.

**Procedural History**

On June 7, 2016, named Plaintiffs Robert Grayer and Brian Morton filed their Complaint with this Court, alleging Defendant Kennametal Inc. failed to properly compensate

them and other similarly-situated employees in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 *et seq.*, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). On July 22, 2016, Plaintiffs moved to conditionally certify the action as a collective action (ECF DKT # 16). Defendant did not object to this motion. On September 13, 2016, the Court granted Plaintiffs' Motion and conditionally certified the collective action (ECF DKT # 48). Notice was approved and sent and 191 individuals opted-in to the collective action. The case has proceeded through discovery and on December 8, 2017, Defendant filed its Motion to Decertify the Class. Also on December 8, 2017, Plaintiffs filed their Motion for Class Certification Under Rule 23.

## Background Facts

According to the allegations in Plaintiffs' Complaint, Defendant is a manufacturing company that designs and manufactures engineered components, advanced materials and cutting tools. Plaintiffs are manufacturing employees at Defendant's Orwell, Ohio facility ("Orwell").

Until January 2014, Orwell had three eight-hour shifts: 7:00 AM to 3:00 PM, 3:00 PM to 11:00 PM and 11:00 PM to 7:00 AM. Additionally, Orwell had two "24/7 shifts" which are twelve-hour shifts running from 6:40 AM to 6:40 PM and 6:40 PM to 6:40 AM. During the entire time in question, all hourly employees were required to return to their work station by the end of their breaks.

In or around January 2014, Defendant implemented a "shift overlap" policy at Orwell which required all hourly employees, including both eight-hour shift and twelve-hour shift employees, to arrive at their work stations fifteen minutes before their starting time. This

policy continued until July 2014.

During this time period, all hourly employees were given two scheduled breaks: an unpaid fifteen-minute break and a paid thirty-minute lunch break. Additionally, all employees working the twelve-hour shift received an additional fifteen-minute break. All hourly employees were clocked in for their entire shift, including the fifteen-minute shift overlap period and any breaks.

Therefore, from January 2014 through July 2014, Plaintiffs allege that they worked for either eight hours and fifteen minutes or twelve hours and fifteen minutes but were only paid for eight or twelve hours, respectively. The extra fifteen minutes was automatically deducted from their paychecks.

In July 2014, Defendant changed to a twenty-minute shift overlap policy at Orwell, which required all hourly employees working on an eight-hour shift to report to work twenty minutes early. After this policy was implemented, employees working on a twelve-hour shift were no longer subject to the shift overlap policy. The twenty minute shift overlap policy continued until June 19, 2016.

During this period, all eight-hour employees were given one unpaid twenty-minute break and one paid twenty minute lunch break per day. Employees were clocked in for their entire shift, including the twenty minute shift overlap period and any breaks.

Therefore, from July 2014 to June 19, 2016, Plaintiffs allege that they worked for eight hours and twenty minutes but were only paid for eight hours. The extra twenty minutes was automatically deducted from their paychecks.

On September 13, 2016, the Court conditionally certified the collective action as

follows:

> All former and current manufacturing employees employed by Kennametal Inc. in Orwell, Ohio at any time between June 7, 2013 and the present.

**<u>Defendant's Motion to Decertify</u>**

Defendant moves to decertify the conditionally certified collective action because Plaintiffs cannot show they are similarly situated. Defendant emphasizes that the shift overlap policy was temporary. Plaintiffs and Opt-in Plaintiffs consist of employees working two different shifts and in twelve different departments and subdepartments. Plaintiffs have significantly different job duties, wages, overtime hours, supervisors, schedules and circumstances relating to breaks which would require highly individualized inquiry.

Next, Defendant argues that the substance of each Plaintiff and Opt-in Plaintiff's claims differ. Some claim that they were not paid for the shift overlap period at the beginning of their shift while others claim they were not paid for breaks. These differing claims trigger individualized defenses.

Furthermore, Defendant contends that the shift overlap policy did not violate the FLSA. Defendant paid Plaintiffs for a bona fide meal period, which Defendant was not legally obligated to do. As such, Defendant may offset this overpayment against any unpaid wages claimed by Plaintiffs. Additionally, Plaintiffs have not met their burden of showing that the unpaid break violated the FLSA because twenty-minute rest breaks are not necessarily compensable under 29 C.F.R. § 785.18.

Lastly, Defendant contends that each Plaintiff would require individualized proof to determine liability and/or damages. The Court would be required to adjudicate Plaintiffs'

claims through countless "mini-trials" which would impose great burdens on the Court and jury and would be unfair to Defendant. Therefore, Defendant requests that the Court decertify the collective action and dismiss all of the Opt-in Plaintiffs' claims.

**Plaintiffs' Opposition**

Plaintiffs contend that they have met the applicable Sixth Circuit precedent for establishing that they are similarly situated. The differences in job duties, supervisors, schedules and breaks that Defendant points to are irrelevant and distract from the real issues in this case.

Defendant, through its own 30(b)(6) designees, has admitted that the shift overlap policy applied to all non-exempt hourly workers at Orwell. Additionally, Defendant has failed to point to a single Opt-in Plaintiff that was not subject to the shift overlap policy at any point. Plaintiffs contend that the shift overlap policy is a violation of the FLSA.

Plaintiffs argue that the fifteen to twenty minutes that Defendant automatically deducted from employees' paychecks was compensable time. Because employees were required to return to their work stations before the end of their breaks, employees did not get to use their entire break for their benefit. Furthermore, 29 C.F.R. § 785.18 states that short rest periods must be compensated and 29 C.F.R. § 785.19 states that meal periods should ordinarily be thirty minutes. Lastly, Defendant admits that it paid employees for their meal breaks.

If the Court were to decertify this action, there would be up to 363 individual trials. Therefore, Plaintiffs argue that the Court should deny Defendant's Motion to Decertify in order to preserve judicial resources and enable Plaintiffs to fairly litigate their claims.

**Plaintiffs' Motion for Class Certification**

Plaintiffs move for class certification of their OMFWSA claims pursuant to Fed. Civ. R. 23. Plaintiffs seek to certify the following class:

> All current and former hourly employees of Kennametal Inc. ("Kennametal") who worked at Kennametal's facility in Orwell, Ohio between January 2014 and June 2016 and who were subject to a "shift overlap" or early start work schedule.

Plaintiffs argue that class certification is appropriate because Defendant admits that it applied the same shift overlap policy uniformly to 363 employees at Orwell. Additionally, many of the putative class members are current employees at Orwell and would not be able to bring these claims in the absence of class certification. The named Plaintiffs are adequate class representatives and any differences between Plaintiffs and the putative class are irrelevant because Defendant's illegal policies applied to the entire class. Therefore, Plaintiffs argue that the Court should certify the class pursuant to Fed. R. Civ. P. 23(b).

**Defendant's Opposition**

Defendant counters that Plaintiffs have failed to meet their significant burden of proving that class action is a superior method of adjudicating their claims. Defendant also contends that it would be impossible for Plaintiffs to prove their claims using common proof and thus, class certification is improper in this case. Furthermore, there is "extensive diversity" between the named Plaintiffs and the rest of the purported class, making Plaintiffs' claims atypical and Plaintiffs inadequate representatives. Therefore, Defendant requests that the Court deny Plaintiffs' Motion for Class Certification.

**LAW AND ANALYSIS**

**Motion to Decertify**

An employee may bring an action on behalf of himself and other "similarly situated" employees pursuant to 29 U.S.C. § 216(b). Unlike typical class actions, each employee wishing to join the collective action must affirmatively "opt-in" by filing written consent. 29 U.S.C. § 216(b).

The Sixth Circuit expressed approval for the two-phase test developed by the district courts in the Sixth Circuit. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006). The first phase takes place at the beginning of discovery when the court has minimal evidence. *Id.* at 546. In the first phase, courts may grant conditional class certification upon a modest factual showing sufficient to demonstrate that the putative class members were the victims of a single decision, policy or plan. *Id.* at 547. Plaintiffs must show that their "position is similar, not identical, to the positions held by the putative class members." *Id.* at 546-47. Plaintiffs must only establish some "factual nexus" between the Plaintiffs and the potential class members. *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 868 (S.D.Ohio 2005) (citing *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 432 (S.D.N.Y. 1995)).

The second phase occurs once "all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546. "We recognize that the second stage warrants a stricter standard than the conditional certification stage because it occurs near the end of discovery." *Frye v. Baptist Memorial Hospital, Inc.*, 495 Fed.App'x 669, 671 (6th Cir. 2012). At this point, courts have discretion to make a more thorough finding regarding the "similarly situated" requirement. *Comer*, 454 F.3d at 547. "If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without

prejudice." *Douglas v. GE Energy Reuter Stokes*, No. 1:07CV077, 2007 WL 1341779, at *4 (N.D.Ohio April 30, 2007) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3D 1208, 1218 (11th Cir. 2001)).

During the second phase, Plaintiffs' burden becomes more significant. Lead plaintiffs bear the burden of showing that opt-in plaintiffs are similarly situated to them. *Frye*, 495 Fed.App'x at 672. "Plaintiffs generally must produce 'more than just allegations and affidavits' demonstrating similarity in order to achieve final certification." *Id.* at 671. However, this standard is less stringent than the Fed. R. Civ. P. 23(b) predominance standard.

The Sixth Circuit has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). In determining if Plaintiffs are similarly situated, courts may consider "the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." *Id.* at 584.

Defendant contends that Plaintiffs and Opt-in Plaintiffs are not similarly situated due to differences in their job duties, wages, overtime hours, supervisors, schedules and circumstances relating to breaks. However, the Sixth Circuit held in *O'Brien* that defendants' argument that "some of the plaintiffs were managers and therefore could not be 'similarly situated'... is not a compelling argument, because managers could also have been cheated by defendants." *Id.* at 586. Differences in position do not matter if Plaintiffs and

Opt-in Plaintiffs can establish that they suffered from a common, FLSA-violating policy.

Defendant states that the shift overlap policy was "common to most (but not all) Plaintiffs and Opt-In Plaintiffs." Defendant contends that three specific Opt-in Plaintiffs admitted that they were not subject to the shift overlap policy. First, "Opt-In Plaintiff Robert Ritter admitted that he did not work a shift overlap on the 12 hour-24/7 B shift." However, Ritter's testimony implies that he was subject to a shift overlap policy before he began working on that shift:

> Q. So in the later part of 2014 when you moved to the 24/7 B shift –
>
> A. Uh-huh.
>
> Q. – you were no longer working eight hours and coming in the 20 minutes prior to your shift?
>
> A. Correct.

Ritter Dep. 37:8-13. Since the shift overlap policy began in January 2014 and Ritter did not transfer to the twelve-hour shift until "the later part of 2014," it is reasonable to conclude that Ritter was subject to the shift overlap policy when he worked an eight-hour shift during early 2014.

Next, Defendant states that "Opt-In Plaintiff Gregory James admitted that as a Production Supervisor he was paid on a salary basis and not subject to the shift overlap from approximately January 2015 to March 2016." However, Defendant fails to advise the Court that James was an hourly manufacturing employee from January 2014 until March 2015 and again in March 2016 until the present. James Dep. 45:1-4, 45:22-46:2, 49:14-20. Thus, James was subject to the shift overlap policy both before and after he served as a supervisor.

9

Lastly, Defendant states that "Opt-In Valerie Gambos testified that she was only required to work shift overlap 'sometimes.'" However, Plaintiffs are correct that they need not prove that each Plaintiff was subject to the shift overlap policy during the entire time the policy was in place but only that each Plaintiff was subject to it at some point.

Furthermore, Defendant's own 30(b)(6) designees testified that the fifteen-minute shift overlap policy applied to all hourly employees and that the twenty-minute shift overlap policy applied to all eight-hour employees. Starr Dep. 22:21-25, 26:25-27:7, 31:16-34:2, 42:24-43:21; Gambatese Dep. 22:2-24, 31:12-22. Defendant's designee also testified that fifteen or twenty minutes per day were automatically deducted from employees' paychecks. Gambatese Dep. 38:16-20, 40:24-41:22. Therefore, the Court finds that Plaintiffs and Opt-in Plaintiffs were subject to a common, FLSA-violating policy and thus, Plaintiffs and Opt-in Plaintiffs are similarly situated.

Even so, Defendant contends that Plaintiffs have failed to meet their burden of proving that they suffered from a single, FLSA-violating policy because "there is nothing unlawful about Kennametal's 20-minute shift overlap." However, Defendant has merely made conclusory statements that the policy is lawful without providing any legal support. The Court finds that the shift overlap policy arguably violates the FLSA since Defendant admits that it required employees to work an extra fifteen or twenty minutes and then deducted fifteen or twenty minutes per day from employees' paychecks.

Defendant further contends that it overpaid employees by compensating them for lunch breaks when it was not legally obligated to do so. Thus, "Kennametal may offset this overpayment against any unpaid wages claimed to be due." However, it is questionable


whether the fifteen or twenty minutes that was deducted from employees' paychecks would qualify as a bona fide meal period under 29 C.F.R. § 785.19.  Furthermore, the Court finds that this issue is irrelevant at this stage of the proceedings since it has more to do with calculation of damages than determination of liability.

Finally, Defendant argues that several defenses would apply to Plaintiffs on an individual basis.  Plaintiffs contend that these defenses either apply to the entire class or lack merit.  "Several circuits, including our own, hold that individualized defenses alone do not warrant decertification where sufficient common issues or job traits otherwise permit collective litigation."  *Pierce v. Wyndham Vacation Resorts, Inc.*, No. 3:13-CV-641-CCS, 2017 WL 4398656, at *11 (E.D.Tenn. Oct. 3, 2017) (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 404 (6th Cir. 2017)).  Since Plaintiffs and Opt-in Plaintiffs are similarly situated, the Court holds that the issue of individualized defenses does not warrant decertification.  Therefore, the Court denies Defendant's Motion to Decertify.

**Motion for Class Certification**

Fed. Civ. R. 23 governs class action lawsuits.  Rule 23 establishes a "two-step analysis" for certifying a class.  *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D.Ohio 2012).  "First, plaintiffs must satisfy the four prerequisites of Federal Rule Civil Procedure 23(a).  Second, the action must satisfy at least one of three subdivisions of Federal Rule Civil Procedure 23(b)." (Internal quotations omitted).  *Id.*  The party seeking certification bears the burden of proof.  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  District courts possess broad discretion in this matter but must conduct a "rigorous analysis" into whether Rule 23's prerequisites have been met.  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388,

397 (6th Cir. 1998) (*en banc*).

At this stage, the Court does not evaluate the merits of Plaintiffs' underlying claims and should accept the allegations in the Complaint as true. A court may, however, look beyond the pleadings to determine what type of evidence will be presented by the parties. *Am. Med. Sys.*, 75 F.3d at 1079.

The four prerequisites of Rule 23(a) are: (1) the class must be so numerous that "joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims of the representative parties must be "typical" of those of the class and (4) the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b)(3) has two additional requirements: (1) predominance and (2) superiority. Fed. R. Civ. P. 23(b)(3).

**Rule 23(a) Prerequisites**

*Numerosity*

Defendant's 30(b)(6) designee testified that "there are 363 current or former hourly employees of Kennametal's Orwell facility between January 2014 and June 2016 who were subjected to a shift overlap or early work start." Randau Dep. 17:19-25. "While there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006). Although the Court may consider factors such as class size, geographic distribution of class members and the ability of class members to pursue individual litigation, courts have generally held that forty or more class members is sufficient to meet the numerosity requirement. *See Krieger v. Gast, et al.*, 197 F.R.D. 310, 314 (W.D.Mich. 2000); *Consolidated Rail Corp. v. Town of Hyde Park*, 47

F.3d 473, 483 (2nd Cir. 1995). Additionally, in *Swigart*, the District Court for the Southern District of Ohio held that a class of 350 employees "far surpasses the size of classes this Court has found to satisfy the numerosity requirement in the past." *Swigert*, 288 F.R.D. at 183. Therefore, the Court finds that this proposed class of 363 members satisfies the numerosity requirement.

*Commonality*

The commonality requirement is satisfied when "there are questions of law or fact common to the class." *Swigert*, 288 F.R.D. at 183. In *Sprague v. General Motors Corp.*, the Sixth Circuit outlined the proper analysis to determine commonality:

> The commonality requirement deals with shared questions of law or fact. Although Rule 23(a)(2) speaks of "questions" in the plural, we have said that there need only be one question common to the class. (Citation omitted). It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.

*Sprague*, 133 F.3d at 397.

Plaintiffs contend that there exist common questions of law and fact, including but not limited to: (1) whether Defendant's shift overlap policy violated the FLSA and Ohio law, (2) whether Defendant's break policies and procedures violated the FLSA and Ohio law and (3) whether Defendant's practice of automatically deducting break time from employees' paychecks violated the FLSA and Ohio law. Defendant counters that proof of these claims would inevitably rely on individualized inquiry and thus, these questions cannot be resolved on a classwide basis. In light of Defendant's own admission that the shift overlap and automatic deduction policies applied to all hourly manufacturing employees at Orwell during

13

the relevant time period, the Court finds that Plaintiffs have satisfied the commonality requirement.

*Typicality*

The Sixth Circuit described the typicality requirement in detail in *Sprague*:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Sprague*, 133 F.3d at 399 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082).

Typicality and commonality are often analyzed together. In this case, the claims of the representative Plaintiffs are the same as the claims of the proposed class, namely, that Defendant failed to properly compensate them for all of the time they worked. Since Defendant admits that this policy applied to the named Plaintiffs and to all hourly employees at Orwell, the Court finds that the typicality requirement is met.

*Adequacy of Representation*

The named Plaintiffs must fairly and adequately represent and protect the interests of the class. In *Rutherford v. City of Cleveland*, the Sixth Circuit stated: "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998) (quoting *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). "Accordingly, to satisfy the adequate representation requirements under

14

Rule 23... there must be an absence of a conflict of interest, and the presence of common interests and inquiry." *Id.*

Defendant contends that the named Plaintiffs would not adequately represent the proposed class "because of the extensive diversity between [them] and the rest of the class":

> [The named Plaintiffs] worked in only 6 of the 39 positions; in only 2 of the 8 departments; on only the third shift (for which they received a shift premium); never worked the 12-hour shift; admit that 'everybody pretty much does their own thing' during breaks; and worked under different managers and supervisors. Clearly, [the named Plaintiffs] do not share common interests with class members employed in different positions; in departments; on the first or second shift (who do not receive a shift premium); on the 12-hour shift; or who worked under different management.

However, the Court finds that contrary to Defendant's assertions, the named Plaintiffs share common interests with the rest of the proposed class. The named Plaintiffs and members of the proposed class are all hourly manufacturing employees at Orwell. The named Plaintiffs' claims are identical to the class and their interests are the same as the class in resolving these claims. Defendant has not made the Court aware of any conflict of interest between the named Plaintiffs and the proposed class members. Therefore, there are no antagonistic interests between the named Plaintiffs and the rest of the proposed class.

Furthermore, Defendant does not contest that named Plaintiffs' counsel are experienced in class litigation and have vigorously prosecuted the claims throughout this litigation. Therefore, the Court finds that named Plaintiffs have satisfied the adequacy of representation requirement.

Having found that the Rule 23(a) criteria is satisfied, the Court must next examine whether one of the factors of Rule 23(b) is satisfied. The named Plaintiffs contend that the

proposed class satisfied the Rule 23(b)(3) requirements.  Rule 23(b) states in pertinent part:

> **(b) Types of Class Actions.**  A class action may be maintained if:
>
> Rule 23(a) is satisfied and if:
>
>> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>> ...
>>
>>> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>>> ...
>>>
>>> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>>>
>>>> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>>>>
>>>> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against the class members;
>>>>
>>>> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>>>
>>>> **(D)** the likely difficulties in managing a class action.

*Predominance*

Rule 23(b)(3) "parallels subdivision (a)(2) [commonality] in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Am. Med. Sys.*, 75 F.3d at 1084. "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." (Internal quotation marks omitted). *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.*

Plaintiffs contend that "[b]ecause the 'shift overlap' practices and policies are uniform throughout the Class, and because the issue of individual damages is not complex or burdensome," the predominance requirement is satisfied. Defendants counter that "[d]ocumentary and testimonial evidence is needed to determine whether... a worker was subject to the 'shift overlap.'" However, Defendant has admitted through its 30(b)(6) designees that the shift overlap and automatic pay deduction policies applied to all hourly manufacturing workers at Orwell. Since the policies applied uniformly to all members of the prospective class, the Court finds that common issues predominate.

Defendant next contends that the issues of individual damages that exist with regard to the prospective class are complex and predominate over common questions concerning liability. However, when liability can be determined on a classwide basis, as it can here, the existence of individualized damages does not undermine predominance. *See Beattie*, 511

17

F.3d at 564.

Defendant next raises several defenses that it contends apply to Plaintiffs on an individual basis and thus, predominate over any common issues.  However, some of these defenses, such as whether Defendant is entitled to offset any unpaid wages with overpayment from non-compensable meal periods, may be determined on a classwide basis.  Additionally, the fact that some individualized defenses may apply does not undermine predominance if the requirement is otherwise satisfied.  *Beattie*, 511 F.3d at 564.  Therefore, the Court finds that Rule 23(b)(3)'s predominance requirement is met.

*Superiority*

"Moreover, Rule 23(b)(3) mandates a finding that the class action is a ***superior***– not merely an adequate– available method for adjudicating the controversy."  (Emphasis original). *Anderson v. United Financial Sys. Corp.*, 281 F.R.D. 292, 298 (N.D.Ohio 2012).  In determining whether a class action is superior, courts consider the four factors listed above: (1) the interests of class members in individually controlling separate actions, (2) any other pending litigation about the controversy in question, (3) the desirability of concentrating the litigation in the present forum and (4) the difficulties likely to be encountered in managing the class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

The Court finds that a class action is clearly a superior method of resolving this controversy.  First, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Beattie*, 511 F.3d at 567 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).  Thus, when "individual suits would yield small

recoveries," such as in this case, a class action is a superior method of adjudicating the controversy. *Id.*

Furthermore, Plaintiffs point out that almost all of the class members reside within the Northern District of Ohio, making it desirable to concentrate a class action in this forum. The Court has not been made aware of any additional pending cases regarding the same controversy. Lastly, while Defendant contends that the management of a class action consisting of up to 363 employees would be prohibitively difficult, Defendant has not given the Court any basis to conclude that this is the case. The Court does not find that this class action would necessarily be unmanageable simply because the proposed class consists of 363 members. Thus, the Court finds that the superiority requirement of Rule 23(b)(3) is met.

Therefore, for the foregoing reasons, the Court denies Defendant's Motion to Decertify FLSA Collective and grants Plaintiffs' Motion for Class Certification Pursuant to Civil Rule 23.

IT IS SO ORDERED.

    /s/Christopher A. Boyko  
CHRISTOPHER A. BOYKO  
United States District Judge